Mr. Justice Cox
delivered the opinion of the Court:
This is an action in ejectment brought to recover lot 15,. in square 553 in this city. The judgment below was for the defendants.
At the trial, the plaintiff', in order to make out his proof of title, offered evidence tending to show that Notley Young was the original proprietor of the ground, and that, in the-division between him and the Commissioners of the Federal city, this lot and several others were assigned to Notley Young. Ho then offered in evidence deeds from various' parties who are supposed to have been heirs of Notley Young. The deeds are not put in the record in full, and we are not, therefore, able to speak from the record, of their sufficiency, but it is presumed that they conveyed such interests as the grantors had, as heirs of Notley Young.. And the plaintiff there rested his evidence.
The defendants, in order to make out the issue joined on their part, started out by offering a deed from the corporation of Washington to James A. Kennedy, giving a tax title, and another deed from James A. Kennedy to George Kauffman, under whom the defendants claimed. The plaintiff objected to both deeds, as evidence, on the general ground that a tax title cannot be established except by showing compliance with all the preliminaries to the issue-of the tax deed. If these deeds were offered in evidence to establish title, undoubtedly that objection w'as correct;, but after these deeds were admitted, they were followed up' *309 tty evidence of actual possession, so that the deeds were •offered simply as evidence of claim and color of title. No pretense was made by the defense that these tax deeds conferred title upon them, but they were offered in evidence ■simply to show that Kennedy and Kauffman entered under them as color of title, with claim of title, and further evidence was offered that those claiming under the deeds have remained in possession between twenty and thirty years, ■and that the property was fenced in.
The plaintiff then offered rebutting evidence with regard to the condition of tire fence about a part of the property, and certain other items of evidence; for instance, a tax sale for paving, and a letter from Mr. Cluss, who was in the Engineer Department of the District of Columbia, addressed to Shepherd, Vice-president of the Board of Public Works, Recommending that some six hundred dollars be paid to Mrs. Kauffman for damages occasioned to her by the running of a sewer through the square. It appeared that there were five or six lots claimed under the same original-tax deed. It was in the northwest corner of the square' that the sewer runs through, and she was paid'$600 as a fair equivalent for the damages done by the destruction of the crops, appropriation of the ground, &c., and she also conveyed to the District of Columbia a right of way through lots 16, 17 and 18, not mentioning 15. It is difficult to ascertain from the record what the object of this evidence was, or its connection with the case. It was said in argument that the object was to show that she only claimed title to lots 16, 17 and 18, because she did not convey a right of way to the District through 15, but it does not -appear from the record that the sewer ran through lot 15. ■On examination of the approved maps of the city, it is seen ■that this sewer was in a branch of the Tiber, and that while it entered the square about the middle of the north side it went clear of lot 15, which is a good reason why her conveyance of a right of way did not include lot 15, In view *310 of the object thus stated, for which the paper was offered,, it appears to have been irrelevant, and we see no error in rejecting it.
The plaintiff also then offered in evidence a conveyance from the corporation of Washington to Samuel Cross, of this same lot, under a tax sale, and testimony showing that from 1874 down to the beginning of the suit, the plaintiff and-those under whom he claims had paid taxes on the property.
The testimony on both sides being concluded, the plaintiff asked eleven instructions and the defendant asked six.. The court refused all the prayers of both the plaintiff and the defendant, and in lieu thereof gave a charge. There was no exception by either party to the refusal of the 'court to grant any of these instructions, so far as appears from the record before us. The only exception taken was to certain-portions of the Charge.
In the argument, complaint was made that certain things were omitted from the charge that should liave been said, such as had been asked in the instructions, but there was-no exception to the charge for any omission. A number of exceptions were taken to portions of the charge. The court in charging the jury, said : “This is an action of ejectment brought by the plaintiff to recover possession and the title-to the land in controversy. The plaintiff claims to have-succeeded to the title of one Notley Young, who died many years ago. He claims that in 1873, each and all of the-heirs of Notley Young conveyed to him ; that the three-deeds which have been put in.evidence were joined in by each and all of Notley Young’s heirs. This is the first question for your consideration. Are you satisfied from the evidence in the case that all of Notley Young’s heirs are named as grantors in one or the other of these deeds ? If so, then the plaintiff' has established & prima facie case. If not, if there were any heirs of Notley Young at the time these deeds were executed who did not join therein, wha *311 have not conveyed, then under the pleadings in this case, I advise you that the plaintiff cannot recover.”
This is the first part of the charge that is excepted to. Now, the objection to this is, that if it turns out that these were not all the heirs of Notley'Young then they were at least entitled to recover part of the property, but the court instructed the jury that they could not recover anything. The law on this subject is very simple. If a party claims an entire tract of land, and establishes title to only part of it, he can get a judgment for that part, as very often happens in the old form of ejectment, but when a party claims under demise from different heirs of several undivided interests, and he fails to prove the interests in the land of one of the parties, he cannot recover for the interest not proven, of course. The rule in ejectment is that the recovery must be of the same character as claimed, i. e., he cannot recover an undivided interest where he claims the entirety, or vice versa, though under a claim of a larger undivided interest he may recover a smaller one. In this declaration the entire fee simple is claimed, and the plaintiff cannot recover an undivided interest.
This law is laid down in several of the late American cases, the latest of which is Magruder vs. Peter et al. 4 G. & J., 323; and the same doctrine is found in Adams on Ejectment, which is a standard work on the subject. Of course the burden is on the plaintiff to show his title. He claims through the heirs of Notley Young, and if he fails to show that they were all of Notlej Young’s heirs, he has failed to establish his title, because he shows the title to an undivided part only.
There is in fact an additional trouble about it. These parties claim as heirs of Notley Young, and they simply appear so from the recitals -in the deed, but are not proved to be such. Again, how can the jury render a verdict on the evidence when there was not a. particle of proof to show whether they were entitled to one-third, one-half or *312 three-fourths, or the whole, of the property in dispute? We think that the court, therefore, under the pleadings was correct in saying that unless thej were satisfied that these were all the heirs, they must find for the defendants.
Then the court goes on to say: “You recollect that the defendant claims that in the year 1840 James A. Kennedy got a tax deed of this property ; that a few years afterwards he made some arrangement with defendant’s ancestor, Kauffman, under which he, Kauffman, took immediate possession of the property, and claimed from thence always thereafter to own it; that in 1848 Kennedy deeded it to Kauffman.-”
This statement is objected to alsd, but wo think that the statement is justified by the evidence that, a few years after getting his deed, Kennedy made some arrangement with the defendant’s ancestor, Ivaufftnan, under which lie, Kauffman, took immediate possession of the property, and claimed from thence always thereafter to'own it, and that his deed was put upon record in 1850. See the record.
Then the court says, continuing: “That Kauffman continued to live on these premises from the time when lie so went into possession under Kennedy until 1870 at least, or in all about twenty-seven years; that during all this time he lived upon the land, occupied it openN, notoriously, adversely and continuously, and claimed during the whole time to be its owner, and to own it absolutely. If this statement be true, then the defense is made out and the plaintiff cannot recover.”
This is objected to, but it seems to be a correct statement of the law. The only remaining part relates to what is called the abandonment of the property. “The tax deed to Kennedy and the deed from Kennedy to Kauffman are useful papers only for the purpose of enabling you to determine whether or not Kauffman claimed during all those years to be the owner of the property, and if so, how much he claimed to own, as it is a rule usually where a party *313 takes possession of a piece of property under a deed and occupies it and continues to occupy it, his possession will be regarded as bounded by the limits of the land described in ;such deed.” None of the last part is objected to here. “Whether the property was or was- not fenced, or whether Kauffman did or did not pay all the taxes, would not be conclusive; but they would each and both be circumstances which might assist you in determining the main fact, and that is, whether or not Kauffman really did occupy this property and all of it for the full, continuous period of twenty years, all the time claiming to own it, and that it was his. If he did and did not abandon it in the meantime, then no matter whether or not he abandoned it thereafter, his title has become perfect and the plaintiff cannot recover.”
The claim was, that the fence having disappeared from the property it was abandoned, and that Kauffman also omitted it from his will, although his heirs, I believe, after his death claimed it, and filed a bill for partition. It is admitted that he allowed it to be sold for taxes, but the answer to that on the part of the defense is, that if a title be once proved, there is no such thing as parting with the title to corporal property by abandoning it. Several cases have been cited to show that such may be the-case, and one decision that has been referred to is simply to the effect, that .although one has been in possession of property holding it adversely, if he abandon the property afterwards, it can be considered as evidence tending to show that his original occupation w'as not hostile. Now, that proposition may be perfectly correct, but it is not in Such form before us that we can consider it. The judge w=as not asked to say that abandonment or supposed abandonment was evidence tending to show that the original occupation was not hostile, and he does not say the contrary of that. He says, that if Kauffman occupied the property for the full period of twenty years, claiming to own it, and did not abandon it in the *314 meantime, then an abandonment thereafter was not important and could not affect the rights of the defendants.
On that question there .were two instructions asked, but they were faulty in form, and there was no exception to their refusal. One was: “ If the jury believe from the evidence that the -property in controversy was not enclosed or occupied in 1864, or that the defendant’s ancestor did not inclose said property, but run his fence about 200 feet from the corner of Third and P streets, on the P street line, or that he did not devise the property by his will, or that he permitted the same to be sold for taxes, they are authorized to infer therefrom that the possession was,abandoned, and that his original entry wuis not hostile, then the plaintiff is entitled to recover.” In other words, the mere omission of a lot of ground from a man’s will, or a mere omission to pay his taxes, either one of those facts, is sufficient, of itself, to justify a jury in inferring that the occupation is not hostile. We do not think that would be competent evidence on that point.
The other instruction W'as: “ The jury are instructed that the acts of abandonment or possession of said lot 15 in square 553, the lot in question, by said George Kauffman, and its retaking by his descendants, the defendants herein, as testified to on behalf of the .plaintiff, and said George Kauffman’s ignoring of said lot 15 in his will, introduced in evidence by the plaintiff, show that his possession was never hostile to the rightful owners, and hence adverse possession never was begun, and that then their verdict must be for the plaintiff.”
The jury might consider these facts as evidence, but these instructions would make them' conclusive proof that possession never was hostile. If the instruction had been that the jury might consider these acts of abandonment as evidence tending to establish the fact that possession was not hostile originally, it would perhaps not have been faulty, but that was not the instruction asked. As I said before. *315 there is no exception to' any omission of the charge, such as. the omission to instruct the jury to consider the supposed abandonment as tending to show that possession was not hostile, but the exception is to so much of the charge as-affirmatively instructs the jury that if the defendants and those under whom they claimed held the title for the .full-period, and did not abandon it within the twenty years, an abandonment thereafter would not benefit the plaintiff. We do not think the part of the charge excepted to is unsound; on the contrary, we think it but states the law correctly. There is no such exception as points out any error,. and the motion for a new trial -is, therefore, overruled.