IN THE MATTER OF THE APPLICATION OF SING CHONG COMPANY, LIMITED, TO REGISTER AND CONFIRM ITS TITLE TO LAND SITUATE AT KAALAEA, KOOLAUPOKO, OAHU, TERRITORY OF HAWAII.

No. 2542.

ARGUED NOVEMBER 22, 1944.                    DECIDED JANUARY 17, 1945.

KEMP, C. J., PETERS AND LE BARON, JJ.

OPINION OF THE COURT BY PETERS, J.

This is a proceeding for the registration of title to land, authorized by the provisions of Revised Laws of Hawaii 1935, chapter 144, as amended.

The applicant, a Hawaiian corporation, by its application filed July 25, 1941, sought to have registered in it the fee-simple title to the ahupuaa of Kaalaea, situate at

Kaalaea, in the district of Koolaupoko, Oahu, and certain kuleanas situated within the external boundaries of the ahupuaa. The ahupuaa of Kaalaea is intersected by the Kamehameha Highway which, along the path of intersection, runs in an approximately north-south direction. For purposes of decree the application was amended to set off as a subdivision of the ahupuaa that portion thereof, with its included kuleanas, lying below and easterly of the highway and between the highway and the sea. This subdivision was identified as lot B and we shall hereinafter refer to this area as lot B irrespective of whether the reference has application to the conditions obtaining before or after the filing of the application before the land court.

Within lot B, in addition to the segment of the ahupuaa, are three kuleanas, *viz.*, apanas 2 and 3 of L. C. A. 10208 and apana 2 of L .C. A. 7700. The title of L. C. A. 7700, apana 2, with a right of way over the adjoining land of the ahupuaa to the highway, came in controversy before the land court, the applicant claiming fee-simple title thereto by adverse possession, the respondent, Kaaoaoaloa Kukahiko (w), the present plaintiff in error, a similar estate by descent from the original awardee. It is to the decree of the land court registering the fee-simple title to the kuleana in controversy in the applicant that this writ of error is directed.

The assignments and specifications in error present for review the sufficiency of the evidence to sustain the findings of the judge of the land court upon the necessary concomitant legal elements constituting adverse possession. It will suffice, for the purpose of this appeal, to consider but one—the sufficiency of the evidence to sustain the findings that the possession of the kuleana in question by the predecessors in interest of the applicant was "hostile" as that term is employed in the definition of adverse possession, *i. e.*, possession for oneself under claim of right.

The applicant was duly organized as a body corporate on April 20, 1931. Neither it nor its predecessors in interest claimed color of title nor did it or they claim to have ever personally occupied the kuleana in dispute. Applicant depended for its proof of adverse possession upon year to year tenancies in parol by its predecessors in interest to three separate tenants, viz., to one Iwata from year to year for five years from 1914 to 1919; to one Hori from year to year for five years from 1919 to 1924; and to one Kakuda from year to year from 1924 to 1936. There was some evidence to the effect that prior to Iwata's tenancy some Chinese were planting rice on lot B but who they were or the circumstances of their occupancy does not appear. At any rate applicant did not rely upon the possession of these Chinese in support of its claim to a prescriptive title.

The applicant claimed that title to the kuleana in dispute thus acquired by prescription was conveyed to it by deed of May 8, 1936, from the Hawaiian Trust Company, Limited, the receiver of Sing Chong & Company, a copartnership, in the matter of *Chong Kong Young, et al.*, petitioners, v. *Hong Chan Shee, et al.*, respondents, numbered and docketed in the circuit court of the first circuit at chambers as equity number 2961, an action for the dissolution of the copartnership Sing Chong & Co. The Hawaiian Trust Company, Limited had been appointed temporary receiver on February 13, 1929 and permanent receiver on June 24 following. The only predecessor in interest of the Hawaiian Trust Company, Limited, as such receiver during the prescriptive period claimed was the copartnership Sing Chong & Company.

Prior to the year 1934 the location of L. C. A. 7700, apana 2 within the ahupuaa of Kaalaea was unknown to the predecessors in interest of the applicant. While they knew that this kuleana was within the ahupuaa lying be-

low the highway, its location had not been determined and its presence in the ahupuaa was not disclosed to the three tenants through whom the applicant claimed; these tenants at all times believing, to the extent of their occupancy of land within lot B, that they were in the possession of land owned by their lessors.

There is no evidence of any occupancy of the kuleana in dispute by the plaintiff in error or her predecessors in interest. Nor was she aware of the location of the kuleana within the ahupuaa *prior to 1934.* The common source of information of the exact location of the kuleana was a survey caused to be made by her in that year. The judge of the land court characterized the kuleana in controversy as a "lost" kuleana and that term so aptly fits the situation and reflects conditions existing during the prescriptive period that we shall adopt the term and hereafter refer to the kuleana in dispute as the "lost" kuleana.

To the extent that the lost kuleana was occupied by the successive tenants of the predecessors in interest of the applicant their possession was apparently open, peaceful, and visible and if leased to them by their respective lessors with the intention on the part of the latter to disseise the true owner and through their tenants to hold the same for themselves, such occupancy and possession was hostile to the true owner and was sufficient in law to support a prescriptive title thereto.[1] The possession of a tenant inures to the benefit of his landlord and constitutes the possession of the landlord for the purpose of securing to the latter the benefits of adverse possession and the benefit of the bar of the statute of limitations.[2] Possession, however, to be adverse must be hostile. Anyone in possession of land, with no claim whatever thereto, "must in presumption of law be in possession in amity with and

1 Bishop v. Kala, 7 Haw. 590, 593; Akowai v. Lupong, 4 Haw. 259.
2 Kainea v. Kreuger, 31 Haw. 108.

in subservience to that title."[3]  The great weight of authority is to that effect.[4]  And although actual continuous and exclusive possession for the statutory period unexplained gives rise to the presumption of hostility,[5] the evidence in this case in our opinion rebuts the presumption and leaves the case in that condition where we cannot say that the findings upon the issue of hostility have for their support that substantial evidence more than a mere scintilla necessary in this jurisdiction to support findings of fact.

The only evidence importing a denial of the title of the true owner to the lost kuleana was the conclusion of of one Loo Chow, who became the manager of Sing Chong & Company, the copartnership, in 1914.  After admitting that from the time he became manager he knew that the lost kuleana was somewhere within lot B but that he did not know its exact location nor by whom it was owned, he was asked the question, "Did the Sing Chong Company claim it?" to which he answered "I think they had an idea, all right, but they never pay taxes; otherwise the house won't be there."  The reference of the witness to a house is apparently to the dwelling house occupied by the respective tenants to which we shall hereafter advert.  But what the witness meant by the alternative "otherwise the house won't be there" was left unexplained and upon argument none of the parties would venture an explanation of the language used by the witness in reference to the house.

Nor is there any evidence of the disseisin of the true owner of the lost kuleana by the applicant's predecessors in interest.  The same witness, Loo Chow, disclaimed ever having leased the lost kuleana.  The following evidence is

[3] Harvey v. Tyler, 69 U.S. 328, 349.

[4] 2 C. J. tit. Adverse Possession § 588, p. 264.

[5] Kapiolani Estate v. Cleghorn, 14 Haw. 330; Albertina v. Kapiolani Estate, 14 Haw. 321, 325; Territory v. Pai-a, 34 Haw. 722.

significant: "Q. Were you ever told by the company in any way to take possession of that particular kuleana? A. Yes; they instructed me to lease that land as a whole. Q. To lease that land as a whole? A. Yes. Q. But you never made a lease of this particular kuleana? A. No. Q. None of your leases ever described that kuleana, did it? A. No."

Moreover the tenancies created are consistent with the recognition by the lessors of the title of the true owner to the lost kuleana. The express terms of Iwata's tenancy are not in evidence. He had deceased prior to trial and consequently was not available as a witness. Nor did anyone representing the predecessors in interest of the applicant attempt to enlighten the court upon the subject. It is alone from Hori's evidence that the circumstances of Iwata's tenancies came to light. Hori testified that the area leased by him (Hori) was 5½ acres, previously occupied by Iwata; that the annual rental for all of lot B was $75 plus taxes and that he (Hori) paid $55 a year and $7.50 taxes and that the 5½ acres occupied by him was the southerly portion of lot B, including a spring; that there was a fence along the highway and that a small partition fence running at right angles to the highway separated the area occupied by him and the remaining area to the north. There was some evidence by Loo Chow and Hori that the remaining area to the north was occupied by others but who they were or the length and circumstances of their occupancy does not appear. Kakuda did not refer to them and the area to the north of the division fence referred to by Hori has apparently lain idle.

The express terms of the tenancy to Kakuda were testified to by both Kakuda and Loo Chow. But it was merely to the effect that they both agreed upon the premises leased "by sight" and that Kakuda went into possession of the same premises formerly occupied by his predecessor

Hori at an annual rental of $55 plus $5 taxes. Apparently only a part of lot B was leased to Iwata, Hori or Kakuda. Apana 2 of L. C. A. 10208 has an area of 2.3 acres, apana 3 of the same award one quarter of an acre. The lost kuleana has an area of .22 of an acre. Lot B with its included kuleanas, including the lost kuleana, proved to have an area of 6.09 acres. So that the conclusion is inevitable that in leasing to Iwata, Hori, and Kakuda applicant's predecessors in interest consistently leased less than the entire area included in lot B and that the area remaining and unleased was at all times sufficient to cover the area of the lost kuleana. In other words, applicant's predecessors in interest treated lot B as an estate in cotenancy and leased no more than their proportionate interest therein, relegating to subsequent determination the exact location of the lost kuleana and its definition in severalty in the true owner. It was a lost kuleana indeed and was treated accordingly with due regard to its ownership in another. All this is perfectly consistent with the acknowledgment of the interest of the true owner in severalty in the lost kuleana. Tenancies of 5½ acres agreed upon "by sight," out of an aggregate of 6.09 acres without more, do not support a finding that the lessors at the respective times of the creations of the tenancies involved intended to disseise the real owner of a lost kuleana included in the aggregate area. On the contrary this evidence, when viewed in the light of the surrounding facts and circumstances, is compatible with the recognition of the title of the true owner in the lost kuleana. Recognition of title in another is inconsistent with adverse possession.

Still another instance of lack of hostility is the matter of taxes imposed upon the respective tenants and its ultimate disposition by the lessors. There was exacted by the lessors in each instance from each of the three tenants

from 1914 to 1934 moneys in addition to the rent reserved for the payment of territorial real property taxes. But none of the lessors ever paid the territorial real property taxes assessed against the lost kuleana and they remained delinquent during the entire alleged prescriptive period.

Another significant fact appears to deprive the possession of the element of hostility. The deed of May 8, 1936 from the receiver to the applicant was prepared to execute a consent decree in the dissolution proceedings and to transfer to a corporation theretofore organized by the parties in interest for that purpose all the real property of the dissolved copartnership. It did not contain covenants of warranty. And yet, although containing grants by specific reference to some forty-two kuleanas included within the external boundaries of the ahupuaa, and the exact location of the lost kuleana was then known, it contains no specific reference to the lost kuleana.

In support of the rule enunciated in the *Kapiolani, Albertina,* and *Pai-a* cases applicant went to great length in showing that the dwelling house heretofore referred to encroached upon the lost kuleana for some eight to ten feet and that the width of this encroachment had been increased by Kakuda in 1931. An outdoor privy used in connection with this house, and also on the lost kuleana, was also dwelt upon. In our opinion this evidence was of little probative value. The greater portion of this dwelling house, with other outhouses used in connection therewith, was located upon the ahupuaa. It was not until 1934 that this encroachment was discovered. Prior to that time the encroachment was unknown to the parties in interest. There is some evidence that the present house was preceded by a grass house and no doubt the selection of the site was at a time when a mistake as to boundaries would be of little moment and not intended as a disseisin. In any event the encroachment alone is not sufficient to

sustain adverse possession to the lost kuleana as a whole.

Apparently neither the applicant nor its predecessors in interest ever claimed ownership of the lost kuleana. Such a claim is essential to the acquisition of title by adverse possession.[6] A tentative claim subject to the result of inquiry is not adverse.[7]

Consistently with the views herein expressed, the decree appealed from is reversed and the cause remanded for a new trial upon the issues presented by the pleadings of the respective parties as to the title of the lost kuleana.

C. H. Tracy (C. H. Tracy & E. J. Botts on briefs) for respondent-plaintiff in error.

W. Wight (W. H. Heen & W. Wight on brief) for applicant-defendant in error.

---

[6] Iona v. Uu, 16 Haw. 432, 434.

[7] Wiess v. Goodhue, 46 Tex. Civ. App. 142, 102 S. W. 793.