MATSUHEI OKUNA, Plaintiff-Appellant, *v.* E. NAKAHUNA OR HEIRS OF E. NAKAHUNA, KAMALIIWAHINE OR HEIRS OF KAMALIIWAHINE, et al., Defendants, and HELEN E. DAHLBERG, Defendant-Appellee

NO. 6253

APRIL 30, 1979

RICHARDSON, C.J., OGATA, MENOR, JJ., AND RETIRED JUSTICE MARUMOTO IN PLACE OF KIDWELL, J., ABSENT*

---

*Justice Kobayashi, who heard oral argument in this case, retired from the court on December 29, 1978. HRS § 602-11 (1978 Supp.) provides: "After oral argument of a case, if a vacancy arises or if for any other reason a justice is unable to continue on the case, the case may be decided or disposed of upon the concurrence of any three members of the court without filling the vacancy or the place of such justice."

OPINION OF THE COURT BY RICHARDSON, C.J.

Matsuhei Okuna, plaintiff-appellant, brought an action pursuant to Chapter 669 of the Hawaii Revised Statutes (1976) seeking to quiet title to a parcel of land[1] located in Punaluu, Ka'u, County of Hawaii. His complaint alleged, in essence, that appellant and his predecessors in interest had acquired title to the subject parcel by adverse possession and that appellant was therefore entitled to a decree adjudging him the true owner of the property. In her answer and counterclaim, Helen E. Dahlberg, defendant-appellee, denied appellant's allegations as to acquiring title by adverse possession and sought to quiet title in herself by virtue of deed and adverse possession.[2] After a trial without jury, the court below concluded, *inter alia*, that appellant had failed to establish title by adverse possession because he had not shown the required element of hostility by clear and positive proof. The court also concluded that appellee had not proven ownership either by adverse possession or by deed. This appeal followed.

We affirm.

The sole issue raised in this appeal is whether the trial court erred in concluding that appellant had failed, as a matter of law, to establish title to the subject property by adverse possession. In our review, we note the following factual determinations and legal conclusions made by the trial court in rendering its decision:

FINDINGS OF FACT

. . . .

5. Plaintiff's father, Mitsuhei Okuna, claimed to be the owner of the property since the early 1930's. The .

---

[1] The parcel of land involved is a portion of Tax Map Key No. 9-6-01-9, approximately .44 acres in size.

[2] All defendants with the exception of Helen E. Dahlberg disclaimed any interest in the subject property, were ordered in default, or, by stipulation of counsel, were dismissed from the case, and are not parties to the instant appeal.

family went to the property from time to time to pick fruits from the loulu palm trees and coconut trees. After the Okunas obtained a car in 1934, the visits to the property became more frequent.

6. In 1946, Mitsuhei Okuna allowed Emilio Tutero to live on the property rent free. Mr. Tutero gave Mr. Okuna squid because Mr. Okuna liked squid. Mr. Tutero built a minimal house on the property. He later built a chicken coop. Mr. Tutero repaired the stonewalls surrounding the property because the 1946 tidal wave had damaged the wall. He subsequently maintained the wall during his residence there. Mr. Tutero cleaned the property and planted coconut trees and pumpkin which he used for his opelu fishing business.

Mr. Tutero cleared the property but retained the plum, lauhala and loulu trees.

He kept cats and dogs on the property. Mr. Tutero built a small shack to house his outboard motor.

Mr. Tutero and the Defendant knew each other during Mr. Tutero's stay on the property in issue. No one told Emilio Tutero to leave the property. He kept the area clean and the shacks that he built and the motor-house were visible from the public road.

Mr. Tutero had a canoe and outboard motor for his fishing operations. He sometimes fished with Mr. Kiyota Ito. Mr. Tutero also had some army tents that he had received, and set up the canvas tent near his house. The shacks and the tents were badly damaged in the 1960 tidal wave.

Mr. Tutero lived on the property from 1946 to 1960 and did not live anywhere else. He recognized Mr. Okuna as the owner of the property.

7. Mr. Mitsuhei Okuna died in 1954, leaving the Plaintiff as the residuary beneficiary of his Will and estate.

Plaintiff allowed Emilio Tutero to continue to reside on the property. Plaintiff frequently visited Mr. Tutero and picked coconuts from the property.

8. Plaintiff testified that no one tried to remove Mr. Tutero from the property and no one told his father or him to get Mr. Tutero off the property.

9. After Mr. Tutero left in 1960, Plaintiff continued to visit the property and to gather coconuts. He saw nothing on the property to suggest that someone was living there or using the property.

10. Mr. Kiyota Ito is a fisherman who has lived in Punaluu since 1940 when he was 39 years old. He is now 74 years of age and still goes fishing.

Mr. Ito knew Plaintiff's father since the early 1930's and maintained a social relationship.

Mr. Ito understood that Plaintiff's father owned the property in issue.

Mr. Ito knew Emilio Tutero and visited him from time to time. He lived about a 5-minute walk from the property in issue.

Mr. Ito frequently passed by along the public road fronting the property in issue — sometimes more than twice a day on his way to and from throw-net fishing. While Mr. Tutero was living there, Mr. Ito could see that the property was kept clean, that Mr. Tutero lived there, he saw the house, could see and hear the animals on the property. Mr. Ito also saw coconut trees being planted and he also saw loulu palms and lauhala trees.

Mr. Ito has lived in Punaluu continuously since he was about 39 years old in 1940 and met other people in the community who were also acquainted with the property. He has heard this property being discussed by others in the community and testified that the Punaluu community reputation of the ownership of this property was that Mr. Okuna was the owner of the property. Mr. Ito testified that during the time he has been living in Punaluu, he has never heard that Mr. Okuna was not the owner of the property.

Mr. Ito was once hired by the Defendant to do yard work. He recalls an incident where he asked the Defendant whether he should pick up the stones on the

"Okuna" side of the stonewall and the Defendant replied, "Okuna place, no touch."

Mr. Ito stated that, to his knowledge, no one else claimed to be owner of the "Okuna" property.

11. Jeannette Howard returned to her childhood home in Punaluu in 1949 at the age of 19. She stated that she is familiar with the area in Punaluu and that she believed that a Mr. Napoleon owned the subject property.

She saw Emilio Tutero living there when she returned in 1949 and observed that Mr. Tutero lived there until 1960. She saw a small shack with iron roofing, cats and dogs on the property, and that he kept the land clean.

12. The Defendant has been familiar with the Punaluu area since childhood. The Defendant had a beach home adjacent to the subject property. She saw Emilio Tutero on the subject property but assumed that he was a squatter and was not occupying the property as an owner.

She did not have any knowledge of Plaintiff's claim to this property until the institution of this action.

She purchased the subject property from Hazel Wadell in July, 1965. The Defendant and her husband posted a "private property" sign on a coconut tree near the Hilo-boundary of the subject property.

.    .    .    .    .

14. The Plaintiff, his father, nor Emilio Tutero paid any real property taxes. Plaintiff's father had paid taxes on other parcels of land in Punaluu that he claimed.

In 1954, Plaintiff knew that no real property taxes were being paid on the subject property. Plaintiff assumed others were paying the taxes. Plaintiff also knew that others were listed as owners of the subject property on the tax map. Defendant and her immediate predecessors have paid taxes on the property.

15. Plaintiff's father nor Plaintiff claimed or claims the land under any paper title or document of conveyance.

16. Plaintiff did not list the subject property on his

father's probate estate on the advice of his counsel as he believed that he did not as yet have title to the subject property.

17. In Probate No. 2535, Third Circuit Court, Estate of Mitsuhei Okuna, the Plaintiff succeeded to the right, title, and interest of his father in and to the subject property.

CONCLUSIONS OF LAW

1. The applicable statutory period to establish title by adverse possession in this case is ten years.

2. The Plaintiff and Defendant have failed to establish title by adverse possession.

3. The Plaintiff has not proven the required element of hostility by clear and positive proof as Plaintiff and his predecessor failed to pay any real property taxes and lacked any color of title.

In the instant appeal, appellant does not challenge any of the trial court's findings of fact, but, to the contrary, concedes that they are amply supported by the record. He asserts, however, that the trial court erred insofar as it concluded that he had not established the requisite element of hostility of possession because of his nonpayment of taxes and his lack of color of title.

We agree with appellant that payment of taxes and color of title were not indispensable in proving his claim of title by adverse possession.[3] *See Lai v. Kukahiko,* 58 Haw. 362, 569

---

[3] In Lai v. Kukahiko, *supra,* we stated that "payment of taxes, while an important factor, is only one factor to be considered in determining whether adverse possession is proven or not" and "[a]lthough nonpayment of taxes for a long period of time 'detracts from the strength of . . . [one's] claim of ownership,' it has never been held to be a controlling factor." 58 Haw. at 368 (citations omitted).

With respect to the requirement of showing color of title, this court has previously stated that such a showing is unnecessary in proving adverse possession so long as the other necessary elements are present and not explained. *See* Lai v. Kukahiko, *supra;* Territory v. Pai-a, *supra.* Although the acts of Mitsuhei Okuna prior to 1946 were clearly insufficient to constitute actual, open, notorious, continuous and exclusive possession of the property, we believe that the occupancy of his tenant, Emilio Tutero, between 1946 and 1960 did constitute such possession. Since the possession of a tenant inures to the benefit of his landlord and constitutes the possession of the

P.2d 352 (1978); *Gomes v. Upchurch,* 50 Haw. 125, 432 P.2d 890 (1967); *Deponte v. Ulupalakua Ranch,* 48 Haw. 17, 20, 395 P.2d 273, 275 (1964); *Territory v. Pai-a,* 34 Haw. 722 (1938). Nevertheless, we are not convinced that the trial court's error is sufficient ground for reversal. The judgment of the trial court will not be upset on appeal where the material findings support the conclusion reached, even though the trial court misstates the applicable law in its conclusions of law or otherwise errs in its reasoning. *See Cain v. Cain,* 59 Haw. 32, 575 P.2d 468 (1978); *Federal Electric Corporation v. Fasi,* 56 Haw. 57, 64, 527 P.2d 1284, 1289-90 (1974); *Waianae Model Neighborhood Area Ass'n v. City and County of Honolulu,* 55 Haw. 40, 43, 514 P.2d 861, 864 (1973). *See also In re Estate of Grimble,* 42 Cal. App. 3d 748, 117 Cal. Rptr. 125 (1974); *Midtown National Bank v. Owen,* 497 P.2d 346 (Colo. App. 1972).

The element of hostility is satisfied by showing possession for oneself under a claim of right. *Re Land Title, Sing Chong Company,* 37 Haw. 49, 50 (1945). Such possession must import a denial of the owner's title. *See In re Kamakana,* 58 Haw. 632, 574 P.2d 1346 (1978). Here, although appellant should not have been precluded from proving the hostility of his possession as a matter of law, the undisputed findings of the trial court demonstrate that this element was not established by clear and positive proof. *See Redfearn v. Kuhia,* 53 Haw. 378, 381, 494 P.2d 562, 564 (1972).

First of all, it is clear that the acts of appellant and his predecessor in interest prior to 1946 and after 1960 cannot possibly provide the basis for a claim of title by adverse possession. Infrequent visits to the property to pick and

---

landlord for the purpose of perfecting title by adverse possession, *see* Re Land Title, Sing Chong Company, 37 Haw. 49, 52 (1945); Kainea v. Kreuger, 31 Haw. 108, 114-17 (1929), it appears that the appellant in this case should not have been required to show possession under color of title.

We also note that, although actual, open, notorious, continuous and exclusive possession for the statutory period may give rise to a presumption that such possession was hostile, this presumption is not conclusive and may be rebutted by the other facts and circumstances shown to exist. *See* Suzuki v. Garvey, 39 Haw. 482, 486 (1952); Territory v. Pai-a, 34 Haw. 722, 726 (1938).

gather fruits can hardly be said to constitute continuous possession or even possession at all. Thus, the only period during which appellant could arguably be said to have been in adverse possession would be the time the property was occupied by his tenant, Emilio Tutero, between 1946 and 1960. *See* note 3, *supra*.

However, in 1954, during the occupancy of Emilio Tutero and before the statutory period could arguably be said to have run,[4] appellant failed to list the property as part of the estate of his deceased father. Findings of Fact No. 16. Furthermore, subsequent to Tutero's apparent abandonment of the property in 1960, appellant made no efforts to maintain the land as improved by his tenant but instead merely continued his pre-1946 practice of making occasional visits to pick fruit.[5] Findings of Fact No. 9. These findings, coupled with appellant's nonpayment of taxes and want of color of title, are inconsistent with appellant's assertion that the requisite element of hostility was established at trial. We therefore find no reversible error.

Affirmed.

*Sylvester V. Quitiquit (George S. Yuda* with him on the briefs; *Cook, Choi & Yuda* of counsel) for Plaintiff-Appellant.

*Robert W. Carlsmith (Carlsmith, Carlsmith, Wichman and Case* of counsel) for Defendant-Appellee *Helen E. Dahlberg*.

---

[4] Since the pre-1946 practices of appellant and his father were clearly insufficient to constitute adverse possession, the earliest plausible date on which the ten-year statutory period could be said to have run would be 1956.

[5] We believe that appellant's conduct subsequent to the expiration of the statutory period of limitations, while not enough to defeat title already acquired by adverse possession, is evidence to be considered in determining whether the prior possession of appellant was in fact hostile. *Cf.* Oahu Railway & Land Company v. Kaili, 22 Haw. 673 (1915) (recognition of title of the true owner by one who has acquired title to land by adverse possession upon completion of the statutory period will not alone defeat the title so acquired, although such recognition is evidence to be considered in determining whether in fact the prior possession of the adverse claimant was adverse or a possession in subordination to the true owner's title); Todd v. Kauffman, 8 Mackey 304, 19 D.C. 304 (1890) (evidence that the adverse claimant abandoned property after the lapse of the statutory period is admissible to show that his possession was never hostile).