NICHOLAS R. AGORASTOS and LESLIE M. AGORASTOS, Plaintiffs-Appellees,
v.
SUSAN N. BROWN and LILLIAN WHITNEY, Defendants-Appellants, and
NAKAIKUAANA, also known as NAKAIKUAANA, S. NAKAIKUAANA and SAMUEL NAKAIKUAANA; NAHUA, also known as J. NAHUA and JOHN NAHUA; HANALEI, also known as HANALEI KAMALII, HENRY KAMALII and H. KAMALII; ABBIE KAMALII, also known as ABBIE K. CLARK; ABBIE KALEIKOA; JOHN TO NAKAIKUAANA, also known as JOHN T. NAKAI, KEONI KAIKUAANA and KEONI NAKAIKUAANA; KEKOI, also known as KEKOI KEKOO and ABBIE KEKOI; HELEN KAMALII; MARILYN KAMALII; LEATRICE KAMALII; BARRY KAMALII; HARRY KAMALII, JR.; JOSEPH RICHARDSON, JR. ROMAN R. RICHARDSON; STELLA M. RICHARDSON; WAYNE R. RICHARDSON; Defendants-Appellees
No. 28330
Intermediate Court of Appeals of Hawaii.
September 22, 2008.
On the briefs:
Susan N. Brown, Defendant-Appellant Pro Se.
Lillian Whitney, Defendant-Appellant Pro Se.
Michael W. Gibson (Ashford & Wriston) for Plaintiffs-Appellees.

MEMORANDUM OPINION
FOLEY, Presiding Judge, NAKAMURA and LEONARD, JJ.
Defendants-Appellants Susan N. Brown (Brown) and Lillian Whitney (Whitney) appealed from a Judgment filed on February 12, 2007 in the Circuit Court of the Third Circuit (Circuit Court), in favor of Plaintiffs-Appellees Nicholas R. Agorastos and Leslie M. Agorastos (Agorastoses) and against all named Defendants, finding that the Agorastoses had established their fee simple title to certain land through adverse possession.[1] Whitney's appeal was subsequently dismissed for default of her opening brief on March 31, 2008.
On appeal, Brown argues the Circuit Court erred by granting the Agorastoses' summary judgment motion (Summary Judgment Motion) because genuine issues of material fact exist regarding whether: (1) the Agorastoses have valid paper title to the property; and (2) the Agorastoses have adequately established title through adverse possession.
For the reasons set forth below, we hold that the Agorastoses established the elements of adverse possession and Brown has failed to show that any genuine questions of material fact remain. Accordingly, we affirm.

I. BACKGROUND
On December 9, 2005, the Agorastoses filed a Complaint to quiet title to a portion of Land Patent Grant 3635 to Kealohaai, situated at Waiomao, Ka`u, Hawai`i, being Lot 10 within tax map key (TMK)(3) 9-4-5-19 (the Property) against Defendants-Appellants Susan N. Brown and Lillian Whitney and various Defendants-Appellees: "Nakaikuana, also known as Nakaikuaana, S. Nakaikuanna and Samuel Nakaikuaana; Nahua, also known as J. Nahua and John Nahua; Hanalei, also known as Hanalei Kamalii, Henry Kamalii and H. Kamalii; Abbie Kamalii, also known as Abbie K. Clark; Abbie Kaleikoa; John T. Nakaikuaana, also known as John T. Nakai, Keoni Kaikuaana and Keoni Nakaikuaana; Kekoi, also known as Kekoi Kekoo and Abbie Kekoi, Heirs or Assigns; and All Whom It May Concern."
The Agorastoses' Complaint alleged they had paper title to the Property, which had vested in them by mesne conveyances.[2]
The Complaint also set forth an adverse possession claim, and stated in relevant part that:
Plaintiffs predecessors in title were in adverse possession of the real property described above in excess of 20 years prior to the date hereof. The claims of all persons of an estate or interest in the real property described above, adverse to Plaintiffs' fee simple title, are barred by adverse possession thereof by Plaintiffs' predecessors in title in excess of 20 years prior to the date hereof.
On February 2, 2006, Brown filed an Answer stating that she and her family had "a fee interest in the Property at issue, through intestate succession through their ancestor: `Henry K. Kamalii' and/or deeds, will or other conveyances of Record." Brown also requested "all necessary documentation for each allegation in [the Agorastoses'] Complaint." The Agorastoses' request for default judgment against various other defendants was granted on March 31, 2006.
On September 5, 2006, the Agorastoses filed the Summary Judgment Motion arguing, inter alia, that: (1) the responding parties are unable to prove an interest in the Property by descent because evidence shows their ancestors conveyed title to the Property during their lifetimes; and (2) even assuming there was evidence to support the title by descent claims, the undisputed facts show the Agorastoses gained title by adverse possession because their predecessors-in-title, Daleico, had openly, notoriously, continuously and exclusively used the Property for pasture between 1960 to 1973 and, thereafter, William W. Stearns (Stearns), acting as the licensee of Hawaiiana Investment Co. (Hawaiiana), had openly, notoriously, continuously and exclusively used the land for pasture from 1973 to 1986.
In support of their paper title claim to the Property, the Agorastoses attached various documents to the Summary Judgment Motion, including certified copies of:
(1) Land Patent Grant 3635;
(2) Deed recorded in Liber 16, page 2, from Luther R. Macomber to Nakaikuana, Nahua, Luhia, and Kahuonui;
(3) Mortgage recorded in Liber 147, page 257, purportedly between Launui and Apuna, and Kauhane;
(4) Deed recorded in Liber 158, page 193, purportedly from C. Meinecke to Kaaea, written in Hawaiian;
(5) Pages 290-292, volume 2 of the Minute Book of Judge Lyman at Hilo, Puna, Kau from Third Circuit Probate Records, dated July 5th 1871;
(6) Deed recorded in Liber 146, page 358, from H.K. Kamalii to C. Meinecke, written in Hawaiian;
(7) Findings of Facts and Conclusions of Law, and Order Granting Plaintiff's Summary Judgment Motion in Third Circuit Civil No. 03-1-0067;[3]
(8) Final Judgment in Third Circuit Civil No. 03-1-0067;
(9) A Quitclaim Deed dated December 28, 1973, from Robert L. Hind Jr. and D. Hebden Porteus, doing business as Daleico, which transfers their interest in the Property to Hawaiiana;
(10) A Certificate of Amendment of Articles of Incorporation, showing that "C. Brewer and Company," the sole stockholder of Hawaiiana, changed its name to "C. Brewer Properties, Inc." (Brewer);
(11) Articles of Amendment to Change Corporate Name dated November 29, 1993;
(12) A Quitclaim Deed dated December 15, 1993, wherein Brewer transferred its interest in the Property to Mauna Kea Agribusiness Co., Inc. (Mauna Kea); and
(13) A Quitclaim Deed dated July 17, 2003, wherein Mauna Kea conveyed its interest in the Property to the Agorastoses.
The Summary Judgment Motion was also supported by the Declaration of Richard Schultz (Schultz), a former employee of Daleico. Schultz's Declaration stated the circumstances of his personal knowledge concerning the Property, which he identified on an attached map, and attested to the following facts:
3. Between the early 1960s and 1973, Robert L. Hind Jr. and D. Hebden Porteus, doing business as Daleico were in possession of the Property. I was employed by Daleico during this period of time.
4. Daleico has openly, notoriously, continuously and exclusively used the land for pasture by installing and maintaining perimeter and interior fences necessitated by proper animal husbandry, installing and maintaining water and mineral dispensers, rotating cattle between paddocks, annually introducing bulls to the paddocks and weaning, branding or tagging and inoculating their progeny, cleaning and maintaining the premises, all visible and evident to the public.
5. From 1973 to 1986, William Sterns, a licensee of Mauna Kea Agribusiness/Hawaiian Investment Co. (C. Brewer subsidiaries) was in possession of the property.
6. Mr. Sterns openly, notoriously, continuously and exclusively used the land for pasture by installing and maintaining perimeter and interior fences necessitat by property animal husbandry, installing and maintaining water and mineral dispensers, rotating cattle between paddocks, annually introducing bulls to the paddocks and weaning, branding or tagging and inoculating their progeny, cleaning and maintaining the premises, all visible and evident to the public.
On October 4, 2006, Brown filed pro se an "Opposition to Plaintiff's Summary Judgment Motion." Brown's Opposition argued that summary judgment should be denied, but failed to set forth any additional facts, by affidavit or as otherwise provided in Hawaii Rules of Civil Procedure (HRCP) Rule 56, showing that there was a genuine issue of material fact for trial on the Agorasoses' title by adverse possession. Brown attached the same documents that were filed with the Summary Judgment Motion, along with a copy of a Petition for Writ of Certiorari in the appeal from Civil No. 03-1-0067, in which appeal this court affirmed the judgment against Brown. (Certiorari was denied on October 2, 2006.)
On November 13, 2006, the Circuit Court granted the Summary Judgment Motion, finding that: (1) "There are no genuine issues of material fact and Plaintiffs are entitled to summary judgment in Plaintiffs' favor on the claim of adverse possession"; and (2) "Plaintiffs are the sole and exclusive owner of the portion of Land Patent Grant 3635 to Kealohaai, situate at Waiomao, Ka`u, Hawai`i, within TMK (3) 9-4-5-19."
On December 22, 2006, Brown filed a notice of appeal from the November 13, 2006 order granting the Summary Judgment Motion. On February 12, 2007, the Circuit Court entered Judgment in favor of Agorastoses and against all named Defendants.[4]

II. ISSUES RAISED ON APPEAL[5]
On appeal, Brown appears to contend that:
(1) The Agorastoses are unable to establish a valid paper chain title to the Property because:
(a) C. Meinecke sold his interest in the Property back to Luhia's son, Kaa`ea;
(b) the Deed from H.K. Kamalii to C. Meinecke is invalid as it does not specify the area of land being conveyed; and
(c) H.K. Kamalii's signature on the Deed to C. Meinecke is forged.
(2) The Agorastoses did not establish title to the Property by adverse possession because:
(a) there is inadequate documentation to support their claim, as they presented only the unsworn Declaration of Richard Schultz, as opposed to an affidavit;
(b) the Agorastoses are unable to "tack" possessions together to meet the statutory time period; and
(c) the Agorastoses' predecessors-ininterest were not adverse possessors, because they conveyed their interests only through Quitclaim Deeds, which acknowledges that the rightful owner of the Property could reclaim it at any time.

III. STANDARD OF REVIEW
We review the Circuit Court's grant or denial of summary judgment de novo. Hawai`i Cmty. Fed. Credit Union v. Keka, 94 Hawai`i 213, 221, 11 P.3d 1, 9 (2000).

IV. DISCUSSION
Upon careful review of the record in this case, the briefs submitted and the issues raised by the parties, we resolve the issues raised by Brown as follows:
Although Brown challenges both the validity of the Agorastoses' paper title to the Property, as well as their adverse possession claim, the Circuit Court granted summary judgment based on adverse possession only. In addition, Brown does not identify any affidavits or other evidence in the record supporting her assertions concerning the paper title to the Property. Therefore, our review is focused primarily on whether or not the Agorastoses established the necessary elements of their adverse possession claim.
Pursuant to HRCP Rule 56(c), summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."
Thus, in order to establish title to the Property by adverse possession, the Agorastoses had the "burden of proving by clear and positive proof each element of actual, open, notorious, hostile, continuous, and exclusive possession for the statutory period." Lai v. Kukahiko, 58 Haw. 362, 368-69, 569 P.2d 352, 357 (1977) (citation and quotation marks omitted); Campbell v. Hipawai Corp., 3 Haw. App. 11, 13-14, 639 P.2d 1119, 1120-21 (1982).
"Actual possession" is established where a claimant shows that the claimant entered upon and physically occupied the land in question. Leialoha (k) v. Wolter, 21 Haw. 624, 629 (1913). "Open and notorious possession" is established where a claimant shows "use of the land to such an extent and in such a manner as to put the world on notice by means so notorious as to attract the attention of every adverse claimant." Morinoue v. Roy, 86 Hawaii 76, 82, 947 P.2d 944, 950 (1997) (citation and quotation marks omitted). The "exclusive possession" element requires a claimant to exercise "exclusive dominion over the property and appropriation of it to his or her own use and benefit." 2 C.J.S. Adverse Possession 58 (2003). "Continuous possession," on the other hand, means "use of the property for the full statutory period without interruption or breach." 2 C.J.S. Adverse Possession 149 (2003 & Supp. 2005). Also, "there is a presumption of hostility where all the other elements of adverse possession have been met." Wailuku Agribusiness Co. v. Ah Sam, 114 Hawaii 24, 34, 155 P.3d 1125, 1135 (2007).
The Hawai`i Supreme Court has recognized that "fullscale and continuous cultivation, tillage of the soil, planting, and harvesting a crop" is "superior indicia of actual and continuous possession for purposes of establishing adverse possession. "Morinoue, 86 Hawaii at 81, 947 P.2d at 949 (citation and quotation marks omitted). On the other hand, "[i]nfrequent visits to a property to pick and gather fruit can hardly be said to constitute continuous possession or even [actual] possession at all." Okuna v. Nakahuna, 60 Haw. 650, 656-57, 594 P.2d 128, 132 (1979).
Here, the Schultz Declaration indicated that the Agorastoses' predecessors-in-interest had openly used the land for pasture, by erecting fences around the perimeter of the Property, breeding and running cattle, installing water dispensers, and maintaining and cleaning the Property. These actions demonstrate actual, open, and notorious possession. In addition, the Schultz Declaration details continuous use of the land for pasture from the early 1960s to 1986, which shows continuity and exclusivity of possession.
Thus, we conclude that Schultz's Declaration adequately sets forth the open, notorious, continuous, and exclusive possession elements for establishing title by adverse possession, and the element of hostility may therefore be presumed here. See, e.g., Petran v. Allencastre, 91 Hawai`i 545, 557-558, 985 P.2d 1112, 1124-25 (App. 1999) (finding operation and leasing of a slaughterhouse for over fifty years, erecting fences around property, and posting signs were sufficient to prove elements of adverse possession); Gomes v. Upchurch, 50 Haw. 125, 126, 432 P.2d 890, 891-92 (1967) (finding adverse possession shown where plaintiff had constructed a water pipeline on property, used a stonewall surrounding property as a cattle barrier, cut trees, and seeded the land); Deponte v. Ulupalakua Ranch, Ltd., 48 Haw. 17, 18, 395 P.2d 273, 274 (1964) (concluding land was adversely possessed where evidence showed defendant used parcel of land as part of pasture, had cleared the land several times, and ran cattle upon it).[6] Accordingly, we conclude that, subject to review of the other issues raised by Brown, the Agorastoses met their burden of showing adverse possession of the Property.
Under HRCP Rule 56(c), "once the movant satisfies the initial burden of showing the absence of a genuine issue of material fact, then the burden shifts to the opponent to come forward with specific facts showing that there remains a genuine issue for trial." Arimizu v. Financial Sec. Ins. Co., Inc., 5 Haw. App. 106, 110, 679 P.2d 627, 632 (1984) (citation and otation marks omitted).
On appeal, Brown contends the Agorastoses failed to adequately support their adverse possession claim because they have only presented the "unsworn" Declaration of Schultz, rather than an affidavit. This argument is without merit. The Rules of the Circuit Courts of the State of Hawai`i (RCC) Rule 7(g) (2005) permits declarations in lieu of affidavits. RCC Rule 7(g) states as follows:
(g) Declaration in Lieu of Affidavit. In lieu of an affidavit, an unsworn declaration may be made by a person, in writing, subscribed as true under penalty of law, and dated, in substantially the following form:
I, (name of person), do declare under penalty of law that the foregoing is true and correct.
Dated:
(Signature)
Here, the Schultz Declaration satisfies the requirements of RCC Rule 7(g).
Brown also maintains on appeal that the Agorastoses may not claim "continuous possession" for the statutory period by "tacking" the possession of others.
Between 1898 and 1973, the statutory period for establishing title by adverse possession was ten years. 1898 Haw. Sess. L. Act. 19; Morinoue v. Roy, 86 Hawai`i 76, 81 n. 6, 947 P.2d 944, 949 n. 6 (1997). That period was extended to twenty years in 1973, although this change did not affect "rights that had already matured" prior to that date. Id. (citing Hawaii Revised Statutes (HRS) § 669-1(b) (Supp. 1975)); 1973 Haw. Sess. L. Act. 26, § 6 at 32; see also HRS § 669-1 (1993)[7]
Although the Agorastoses maintain that their predecessors-in-interest, Daleico, adversely possessed the Property continuously between the early 1960s and 1973, we note that a statement of possession beginning sometime in the "early 1960s" is neither clear or positive proof of such possession to meet the statutory period of ten years prior to 1973. Therefore, the Agorastoses may only satisfy the statutory period of twenty years in this case if they are able to tack together the possessions of Daleico (from the early 1960s to 1973) and Hawaiiana (from 1973-1986).
"[A]s a general rule, successive possessions of the land by different individuals or entities cannot be tacked together so as to make a continuous possession." Wailuku Agribusiness Co., Inc. v. Ah Sam, 112 Hawai`i 241, 252, 145 P.3d 784, 795 (App. 2006), overruled on the other grounds by Wailuku, Agribusiness Co., Inc. v. Ah Sam, 114 Hawaii 24, 155 P.3d 1125 (2007) (citation omitted). However, "where there is such a privity of estate or title as that the several possessions can be referred to the original entry, they may be joined, and are regarded as a continuous possession, as in the case of landlord and tenant, ancestor and heirs, and vendor and vendee." Kainea v. Kreuger, 31 Haw. 108, 115 (Haw. Terr. 1929) (citation omitted). The privity required "may be effected by any conveyance, agreement, or understanding which has for its object a transfer of the rights of the original entry." Id. (citation omitted and emphasis added). Thus, "[t]he only essential of the transfer is that the predecessor passes it to the successor by mutual consent, as distinguished from the case where a possessor abandons possession generally, and another, finding the premises unoccupied, enters without contact or relation with the former. Id. (citation omitted); see also Territory v. Pai-a, 34 Haw. 722, 724 (Haw. Terr. 1938) ("If, therefore, Kapahu occupied the property adversely to the true owner and in 1910 made an oral conveyance to Kaui and surrendered possession to the latter and she continued in hostile possession, the adverse occupancy of the latter would be tacked to that of the former.").
Here, certified documents presented by the Agorastoses show that the original adverse possessor, Daleico, transferred its interest in the Property to Hawaiiana in 1973 by a quitclaim deed. As a licensee of Hawaiiana, Stearns's possession is attributable to Hawaiiana. See Kainea, 31 Haw. 108, 115 ("It is not necessary that the person claiming title by adverse possession should have been in personal occupation of the land. Possession by an agent or by a tenant under him inures to his benefit and satisfies the requirements of the statute of limitations."); Petran v. Allencastre, 91 Hawaii45, 557, 985 P.2d 1112, 1124 (App. 1999) ("[O]ne claiming by adverse possession does not necessarily have to reside or be physically present on property.") (citations omitted).
Because Daleico transferred its interest to Hawaiiana by deed, Hawaiiana's subsequent possession, through Stearns, can easily be traced back to the original entry by Daleico. Therefore, privity exists here and the Agorastoses may tack together the possessions of Daleico and Hawaiiana to meet the statutory period of twenty years.
Although unclear from her Opening Brief, Brown also appears to argue on appeal that adverse possession has not been shown because the Agorastoses' predecessors-in-interest all transferred their individual interests in the Property through quitclaim deeds, which "is in itself an acknowledgment that the Occupant is aware that there is a true owner of the land . . who may someday come forward to reclaim his inherited rights." This argument is also without merit.
In Deponte v. Ulupalakua Ranch, Ltd., 48 Haw. 17, 395 P.2d 273 (1964), the Hawai`i Supreme Court addressed a similar argument where it found a defendant had actual, open, hostile, notorious, continuous and exclusive possession over certain land from 1937 to approximately 1960. Plaintiff argued that defendant's taking of a quitclaim deed from another party in 1960 was recognition of title in another, and therefore inconsistent with its claim for title by adverse possession. Id. at 18-19, 395 P.2d at 274-75. The court disagreed and held: "In defendant's acquiring th[e] quitclaim deed, there is nothing partaking of the nature of an acknowledgment of the superiority of Mary Kala's title or the abandonment of the defendant's claim to title by adverse possession." Id., at 19, 395 P.2d at 275.
Moreover, the cases cited in Brown's Opening Brief are unavailing. In Smith v. Hamakua Mill Co., 15 Haw. 648 (Haw. Terr. 1904), for example, plaintiff claimed defendants' possession on land was not hostile because defendants led the plaintiff to believe their possession on the land was on plaintiffs' behalf, and not under a claim of absolute ownership. Hamakua Mill, 15 Haw. 648 at 650. The court agreed and concluded that, "if the possessor so conducts himself towards the true owner as to lead him to believe that the possession is in subordination to his title, the elements of hostility and openness are lacking and the possession is not adverse." Hamakua Mill, 15 Haw. at 656.
Here, Brown has presented no evidence or provided any discernable argument whatsoever that the Agorastoses or their predecessors-in-interest were in possession of the Property under the false pretense of subordination to the real owner's title.
Similarly, in MacFarlane v. Damon, 10 Haw. 495 (Haw. Rep. 1896), defendant claimed title to the land under the doctrine of equitable estoppel, claiming the rightful owner of the land remained silent despite defendant's possession and improvements on the land. The court, however, found estoppel was not warranted because there was no proof the plaintiff made any representations to defendant that title was hers; rather, plaintiff's mere silence was shown, and there was no proof plaintiff knew defendant was acting in reliance on her silence. MacFarlane, 10 Haw. at 498. Here, in contrast, the Agorastoses claim title to the land by adverse possession, not equitable estoppel, and MacFarlane is therefore clearly distinguishable.
In sum, Hamakua Mill and MacFarlane offer no support for Brown's claim that a transfer of interest by quitclaim deed proves a party's possession was not adverse. We agree with the Deponte court's conclusion that acquiring an interest in property through a quitclaim deed does not nullify a party's adverse possession claim.
In light of the foregoing, we conclude Brown has not identified any genuine issue of material fact regarding the Agorastoses' adverse possession claim. Therefore, the Circuit Court did not err in concluding that the Agorastoses were entitled to summary judgment as a matter of law.

V. CONCLUSION
For the foregoing reasons, the Circuit Court's February 12, 2007 Judgment is affirmed.
NOTES
[1] The Honorable Greg K. Nakamura presided.
[2] More specifically, the Complaint alleged that Land Patent Grant 3635 was granted to Kealohaai, after which title to a portion being Lot 10 within TMK (3) 9-4-5-19 vested by mesne conveyances in Luther R. Macomber, who conveyed by Deed dated October 9, 1862, recorded in Liber 16, page 2, to four persons: (1) Luhia; (2) Nakaikuana; (3) Kahuonui; and (4) Nahua. Thereafter, Luhia, Nahua, and Nakaikuana died intestate and title descended to their heirs. Nakaikuana's heirs conveyed their interest to the heirs of Kahuonui. Nahua's heirs conveyed their interest to C. Meinecke, who then conveyed his interest to the heirs of Kahuonui. One of the heirs of Luhia, Hanalei Kamalii, also known as Henry Kamalii and H. Kamalii, died intestate, whereupon title descended to his heirs, one of whom was H.K. Kamalii.

By Deed dated May 4, 1894, recorded in Liber 146, page 358, H.K. Kamalii conveyed his interest in the Property to C. Meinecke, after which C. Meinecke conveyed to the heirs of Kahuonui. Luhia's two remaining heirs, as well as the heirs of Kahuonui, conveyed to Henry K. Martin, Mrs. Margaret Bertelmann and Henry Martisen, after which title to the entire Property vested by mesne conveyances in the Agorastoses.
[3] Civil Case No. 03-1-0067, Mauna Kea v. Nakaikuana, deals with other lots of Land Patent Grant 3635. One of the Agorastoses' predecessors-in-interest, Mauna Kea, was the Plaintiff-Appellee in the case, and Brown was one of the Defendants-Appellants. Essentially, the Circuit Court of the Third Circuit, the Honorable Greg K. Nakamura held: "even if there were evidence to support a title claim by anyone who filed an answer to the complaint or appeared at the summary judgment motion hearing, evidence of use of the land by Plaintiff and its predecessors for a period greatly exceeding the limitation statutes (1) establishes Plaintiff's title by adverse possession, and (2) bars a title claimant's action to recover possession from Plaintiff."
[4] If a notice of appeal is filed after the announcement of a decision but before the entry of an appealable judgment, such notice is considered as filed immediately after the time the judgment becomes final for the purpose of appeal. Hawai`i Rules of Appellate Procedure (HRAP) Rule 4(a)(2).
[5] Brown's Opening Brief was filed pro se and fails, in numerous ways, to comply with HRAP Rule 28 and does not, for example, identify points of error or provide any citation to the record in this case. This court, nevertheless, has attempted to address what appears to be the substance of Brown's arguments on this appeal.
[6] We note that in an unpublished disposition, this court found that Mauna Kea, one of the Agorastoses' predecessors-in-interest, had adversely possessed other lots of Land Patent Grant 3635 by using the land for pasture. (Mauna Kea v. Nakaikuana, Civil No. 03-1-0067, Appellate No. 26120.)
[7] HRS § 669-1 provides in relevant part:

(b) Action for the purpose of establishing title to a parcel of real property of five acres or less may be brought by any person who has been in adverse possession of the real property for not less than twenty years. Action for the purpose of establishing title to a parcel of real property of greater than five acres may be brought by any person who had been in adverse possession of the real property for not less than twenty years prior to November 7, 1978, or for not less than earlier applicable time periods of adverse possession. For purposes of this section, any person claiming title by adverse possession shall show that such person acted in good faith. Good faith means that, under all the facts and circumstances, a reasonable person would believe that the person has an interest in title to the lands in question and such belief is based on inheritance, a written instrument of conveyance, or the judgment of a court of competent jurisdiction.