155 P.3d 1125

**WAILUKU AGRIBUSINESS CO., INC.,**
Respondent/Plaintiff–Appellee

v.

Harvey AH SAM, Patrick Ah Sam, Frederick K. Bailey, Jr., Kenneth D. Kahoohanohano, Richert M. Kamaiopili, Susan K. Koehler, Maebelle M. Librando, Iraday U. Bailey, Patrick E.K. Bailey, Peter L. Bailey, Robert Allen Bell, Patrick K.T. Chu, Rochelle J. Gardanier, Charles Kauluwehi Maxwell, Sr., Judith L. Nagamine, Jacqueline Kuahine Amina Rapoza, Janice L. Revells, Clovis Gyetvai, Elizabeth Keala Han, Glenn F. Kahoohanohano, Helene R. Saronitman, Hannah E.H. Souza, Lillie Lani Bailey Mundon, Charles E. St. Germain and Wayne Chun, Petitioners/Defendants–Appellants

and

Kalapuna (k) and his wife, Kekui (w), Kahololio (w), also known as Hololio Hennessee (w), Heirs or Assigns, Caroline K. Brown, Gayle J. Silva, Ellen P. Parker, Ayieeshya Bonnie Mapua Murphy, July Simeona, Carol A.H. Gaylord, Pearl Leimomi Kamaiopili, Charles Pila, Edward K. Amina, Joyce L. Acidera, Jade V. Miyamoto, Harmon Ah Sam, Joan L. Powell, Pamela Roe, Benedetta L. Davidson, Fredna Yim Cobb–Adams, Mabel E.H. Griffin, Herbert Kaluau Sr., Shirley Maile Bell, Bonnie A. Meyers, and All Whom It May Concern, Defendants.

No. 25930.

Supreme Court of Hawai'i.

March 30, 2007.

As Amended April 12, 2007.

Kevin H.S. Yuen, on the application for petitioners/defendants-appellants.

Gary G. Grimmer and Melissa H. Lambert (Carlsmith Ball LLP), Honolulu, in opposition for respondent/plaintiff-appellee.

MOON, C.J., LEVINSON, NAKAYAMA, ACOBA, and DUFFY, JJ.

Opinion of the Court by ACOBA, J.

Petitioners/Defendants–Appellants (Petitioners) [1] filed an application for writ of certiorari [2] on December 8, 2006, requesting that this court review the published opinion of the Intermediate Court of Appeals (the ICA), [3] affirming the March 7, 2003 and April 28, 2003 grants of summary judgment and the June 2, 2003 final judgment by the second circuit court (the court) [4] in favor of Respondent/Plaintiff–Appellee Wailuku Agribusiness Co., Inc. (Wailuku or Respondent) on its quiet title action. *See Wailuku Agribusiness Co. v. Ah Sam*, 112 Hawai'i 241, 260, 145 P.3d 784, 803 (App.2006). Wailuku filed a memorandum in opposition to the application.

We hold that (1) the ICA gravely erred in its determination that summary judgment was proper as to Apana 1 of the subject property because, viewed in a light most favorable to Petitioners, there are genuine issues of material fact as to whether a cotenancy exists among Petitioners and Wailuku and, if a cotenancy does exist, whether Wailuku acted in good faith towards its cotenants, *City & County of Honolulu v. Bennett*, 57 Haw. 195, 552 P.2d 1380 (1976); (2) the ICA did not gravely err in determining that

no genuine issues of material fact exist as to Wailuku's adverse possession of Apana 3; and (3) the ICA did not gravely err in admitting and relying on the affidavits of Chuck Dando (Dando), Clayton Suzuki (Suzuki), and Avery Chumbley (Chumbley).

I.

The following matters are taken from the submissions of the parties, some verbatim, and from the record.

This is a quiet title action filed by Wailuku concerning two parcels of real property located in Waikapū, Maui, Apana 1 and Apana 3 of Land Commission Award (LCA) 8672, Royal Patent (RP) 6483 [collectively, subject property]. Wailuku claims, among other matters, title to Apana 1 of the subject property based, alternatively, upon paper title or adverse possession, and title to Apana 3 of the subject property solely through adverse possession.

Originally, pursuant to LCA 8672 dated September 27, 1852, Kaluau (k) [5] (Kaluau) acquired three parcels of land in Waikapū, Maui, Apana 1, Apana 2, and Apana 3. Apana 2 is not at issue in this case. In 1855 or 1856, Kaluau died intestate. [6] There is no evidence in the record of any transactions, conveyances, deeds, probates, or court orders transferring ownership of Apana 1 or Apana 3 prior to Kaluau's death. Thus, it appears

---

1. Petitioners are Harvey Ah Sam, Patrick Ah Sam, Frederick K. Bailey, Jr., Kenneth D. Kahoohanohano, Richert M. Kamaiopili, Susan K. Koehler, Maebelle M. Librando, Iraday U. Bailey, Patrick E.K. Bailey, Peter L. Bailey, Robert Allen Bell, Patrick K.T. Chu, Rochelle J. Gardanier, Charles Kauluwehi Maxwell, Sr., Judith L. Nagamine, Jacqueline Kuahine Amina Rapoza, Janice L. Revells, Clovis Gyetvai, Elizabeth Keala Han, Glenn F. Kahoohanohano, Helene R. Saronitman, Hannah E.H. Souza, Lillie Lani Bailey Mundon, Charles E. St. Germain, and Wayne Chun.

2. Pursuant to Hawai'i Revised Statutes (HRS) § 602–59 (Supp.2006) a party may appeal the decision of the intermediate appellate court (the ICA) only by an application to this court for a writ of certiorari. *See* HRS § 602–59(a). In determining whether to accept or reject the application for writ of certiorari, this court reviews the ICA decision for:

(1) Grave errors of law or of fact; or

(2) Obvious inconsistencies in the decision of the [ICA] with that of the supreme court, federal decisions, or its own decision, and the magnitude of such errors or inconsistencies dictating the need for further appeal. HRS § 602–59(b). The grant or denial of a petition for certiorari is discretionary with this court. *See* HRS § 602–59(a).

3. The opinion was authored by Presiding Judge Corinne K.A. Watanabe and was joined by Associate Judges Daniel R. Foley and Craig H. Nakamura.

4. The Honorable Joseph E. Cardoza presided.

5. Herein, (w) indicates a female name and stands for "wahine," the Hawaiian word for woman, and (k) indicates a male name and stands for "kane," the Hawaiian word for man.

6. The year of death is in dispute. Wailuku maintains that Kaluau died intestate in 1855, while Petitioners maintain that he did not die until 1856.

that when he died, Kaluau was still the owner of Apanas 1, 2, and 3. Prior to his death, Kaluau did not apply for a RP for the three parcels granted to him by the Land Commission in 1852. Only Kaluau or his legal heirs could have applied for a RP.[7] Kaluau's survivors included his father, Kalapuna (k) (Kalapuna), his mother, Kekiu (w) (Kekiu), his sister, Haleamau (w), also known as Kahaleamau (Haleamau), his sister Kahololio (w), also known as Hololio Hennessee (Kahololio), and Kaluau–Opio (k) (Kaluau–Opio), his deceased brother's son.

According to Wailuku, a deed dated October 13, 1855 purportedly transferred Apana 1 to a John Richardson (Richardson). The deed states that "Kalapuna, the own father of Kaluau who is deceased, and Piena [ (k) (Piena) ], his brother-in-law, the heirs of Kaluau mentioned above, Puweuweu[8] [ (w) (Puweuweu) ], the wife of Piena mentioned above, sell and convey absolutely this land descended to us from the deceased person mentioned above." This deed was executed by Kalapuna, Piena, and Puweuweu.

The 1855 deed does not specifically identify the property as Apana 1 or define the metes and bounds of the land being conveyed. No

mention is made of Apana 3, nor is the deed executed by Kekiu, Kaluau's mother.[9] Petitioners' translation states that the property being conveyed was "all of that piece of land situate at Kuaiwa, Waikapu, Maui," whereas, Wailuku's rendition purports that it is conveying "the entire piece of land situate at Kuaiwa, Waikapu, Maui."[10] The deed was not recorded in 1855.[11]

It appears that Richardson died intestate.[12] Pursuant to an order filed in Probate No. 1210, the administrators of his estate conveyed, by deed dated September 7, 1860, what Wailuku alleges is Apana 1, to James Louzada (Louzada).[13]

From August through November 1873, Second Circuit Court Probate No. 649, In Re Estate of Kaluau, was pending. Witnesses testified that at Kaluau's death, he was survived by both his mother and father who were both since deceased. The decree issued by the Second Circuit designated Kahololio, Haleamau, and Kaluau–Opio, as Kaluau's heirs.

On December 15, 1873, eighteen years after Kaluau's death, RP 6483 was issued to Kaluau for LCA 8672 (Apana 1, 2, and 3).

7. It is unclear who applied for the, apparently posthumously-issued, RP. A copy of RP 6483 is not included in the record on appeal.

8. Puweuweu is also referred to as Puuweuweu in the record. We will refer to her as Puweuweu except where quoting directly from a specific document.

9. According to the law at the time of Kaluau's death:

> If the intestate shall leave no issue, his estate shall descend one half to his widow, and the other half to his father and mother as tenants in common; and if he leaves no widow, nor issue, the whole shall descend to his father and mother, or to either of them if only one be alive.

An Act to Regulate the Descent of Property both Real and Person, 1850 Penal Code of the Hawaiian Islands, at 181. Thus, because Kaluau died without issue, as appears to be the case, his mother and father would inherit his property equally as tenants in common. See Wailuku Agribusiness Co., 112 Hawai'i at 245, 145 P.3d at 788 (brackets omitted).

10. Petitioners quote from a translation of the Richardson deed by David T. Taira (Taira). Wailuku relies on a translation by Francis N. Frazier

(Frazier). The two translations are similar except where noted above.

11. As the ICA notes, the deed was not recorded until 1878.

> The deed was signed by Kalapuna, Piena, and Puuweuweu by "x" marks, witnessed by Asa Hopu (Hopu) and Nelly Richardson (Nelly), but not recorded until June 10, 1878, after Nelly personally appeared before Hawai'i Supreme Court Justice A. Francis Judd and acknowledged that: (1) on October 13, 1855, she was living with her brother, Richardson, who was now deceased; (2) she saw Kalapuna, Piena, and Puuweuweu, all now deceased, place their "x" marks to the deed; and (3) she and Hopu, who was now deceased, signed their names to the deed as subscribing witnesses.

Wailuku Agribusiness Co., 112 Hawai'i at 245, 145 P.3d at 788.

12. The date of Richardson's death is not clear but it apparently took place sometime between 1855, when he received the deed, and 1860, when the administrators of his estate conveyed the property Wailuku alleges is Apana 1.

13. The deed from Richardson to Louzada is not contained in the record on appeal.

By deed dated January 7, 1875, recorded in the Bureau of Conveyances, Haleamau, Kaluau's sister, and Kaluau–Opio, Kaluau's nephew, and their spouses, conveyed all of their title in LCA 8672 to Kahololio. Petitioners are the descendants and heirs of Kahololio, sister to Kaluau.

Petitioners argue that, as a result, as of 1875, all of Kaluau's real property, including Apana 1 and Apana 3, belonged to Kahololio or her heirs and assigns. Through mesne conveyances, Wailuku acquired the property it alleges is Apana 1 on November 20, 1894.

## II.

### A.

On February 7, 2002, Wailuku commenced its quiet title action. Thereafter, Petitioners filed their answer. On October 7, 2002, Wailuku filed a motion for summary judgment on matters not pertinent to this petition.

On December 31, 2002, Petitioners filed a memorandum in opposition to that summary judgment motion and attached a declaration (first declaration) from Patsy Moana Kamaleilani, also known as Patsy M.K. Kai (Kai). Kai related that she had a Master's Degree in Library Studies and a Certificate in Archives from the University of Hawai'i at Manoa. She also stated that she "ha[s] conducted research into land, tax, court, genealogical, historical, vital statistic records in order to put together a report/history concerning [LCA] 8672, [RP] 6483, to [Kaluau], situate at Waikapu, Maui, Hawai'i." She recounted that as a result of her investigation, she discovered that the Second Circuit Court, Probate No. 649 declared "Kaluau's heirs as [Kahololio] and [Haleamau] (his two sisters) and [Kaluau–Opio], (his nephew)

since Kaluau's parents are dead" and that "the document refers to all three properties of LCA 8672." She further stated that "[i]n January 1875, [Haleamau] and [Kaluau–Opio] conveyed their interests in [Kaluau's] property to [Kahololio]." Finally, Kai stated that she "found no information contained in Wailuku's records which clearly and specifically articulates the manner in which Wailuku has acquired an interest in Apanas 1 and 3, when such interest was acquired, from whom the interest was acquired or other information which would support its claim to both parcels" and claimed that additional time was necessary to gain more information from Wailuku concerning its claims.

### B.

On February 4, 2003, Wailuku filed its summary judgment Motion on Apana 1. In that motion, Wailuku argued that it was vested with paper title or title by adverse possession to Apana 1. Wailuku claimed that the declarations of Katsumi Tadakuma (Tadakuma), Komao Mochizuki (Mochizuki), Dando, Suzuki, and Chumbley evidence that (1) "[Wailuku] and its predecessors openly, notoriously, continuously, and exclusively used Apana 1 for sugar cane cultivation from as early as 1935 to the late 1980's, and for pineapple cultivation from the late 1980's to 1997"; and (2) "[Wailuku's] lessee, Maui Pineapple Company Ltd., has openly, notoriously, continuously, and exclusively used Apana 1 for pineapple cultivation from 1997 to [the] present." [14]

Petitioners thereafter filed their opposition to the summary judgment motion on Apana 1. In their opposition, Petitioners claimed that there were "genuine issues of material

---

14. Attached to Wailuku's motion were the affidavits of Dando, Suzuki, and Chumbley. Dando stated that he had "worked at [Wailuku] for the past 28 years and [was] familiar with the land designated as Apana 1." He further declared that he had "personal knowledge" that "[f]rom as early as 1974 to the late 1980's [Wailuku] and its predecessors openly, notoriously, continuously, and exclusively used the land for sugar cane cultivation" and "[f]rom the late 1980's to 1997, [Wailuku] and its predecessors openly notoriously, continuously, and exclusively used the land for pineapple cultivation." Finally, he stated

that "[f]rom 1997 to [the] present, Maui Pineapple Company, Ltd., Lessee of [Wailuku,] has openly, notoriously, continuously, and exclusively used the land for pineapple cultivation." Chumbley, as president of Wailuku, made the same assertions as Dando as to the adverse possession elements and claimed "knowledge of the facts ... based on records and maps regarding land use." Suzuki, who declared he had "worked at [Wailuku] for the past 24 years and [was] familiar with the land designated as Apana 1," also reiterated Dando's statement.

fact concerning [Wailuku's] claim to Apana 1" and that "[Wailuku] is not entitled to judgment as a matter of law." Petitioners also "rel[ied] upon and incorporate[d] by reference . . . all evidence and arguments previously raised and filed in opposing Wailuku's October 7, 2002 Summary Judgment Motion" and attached a new declaration of Kai (second declaration).[15]

In this opposition, Petitioners also included the declaration of Taira, a Hawaiian language translator, certifying to the truth and correctness of his Hawaiian–to–English translation of (a) the LCA 8672, RP 6483 grant of the subject property to Kaluau; (b) the deed from Kalapuna and others to Richardson, dated October 13, 1855; (c) the application by Kahololio to the Circuit Judge of the "Second District," seeking to be appointed as administrator and heir to "all the estate of [Kaluau], the deceased"; and (d) the deed from Haleamau and Kaluau–Opio to Kahololio, granting Kahololio all of their "joint and individual interests in all the estate of [Kaluau] of Waikapu, Maui," dated January 7, 1875, recorded at the State of Hawai'i Bureau of Conveyances at Liber 51, pages 305–306, all of which were attached to his declaration.

On March 7, 2003, the court's order granting Wailuku's motion for summary judgment and directing entry of final judgment on Apana 1, was filed. In its order the court ruled that, "[h]aving reviewed the memoranda and other material submitted, and having heard oral argument, the [c]ourt finds that there is no genuine issue as to any material fact as to [Wailuku's] title to the land *by adverse possession* and concludes that [Wailuku] is entitled to judgment as a matter of law." (Emphasis added.)

### C.

On March 19, 2003, Wailuku filed its Summary Judgment Motion on Apana 3. Wailuku argued that it was the owner of Apana 3 by adverse possession because the testimony referred to *supra* "evidences that [Wailuku] and its predecessors openly, notoriously, continuously, and exclusively used Apana 3 for sugar cane cultivation from as early as 1935 to the late 1980's, and for pineapple cultivation from the late 1980's to 1997." [16]

Petitioners filed their opposition to the summary judgment motion on Apana 3 and argued that "(1) [Wailuku] failed to meet its burden of proof in presenting evidence of notice to all cotenants not in possession . . . [of its] intent to adversely possess the subject property"; "(2) [Wailuku] has not complied with Hawai'i law in establishing quiet title by adverse possession, and (3) [Petitioners] have a strong interest in controlling Apana 3."

On April 28, 2003, the court's order granting Respondent's summary judgment motion and directing entry of final judgment on Apana 3 was filed and stated that, "[h]aving reviewed the memoranda and other material submitted, and having heard oral argument, the [c]ourt finds that there is no genuine issue as to any material fact as to [Wailuku's] title to the land *by adverse possession* and

---

15. In its decision, the ICA refers to one of Kai's declarations, which appears to be the second declaration, and states:

The declaration of [Kai], who stated that she has a Master's Degree in Library Studies and a Certificate in Archives from the University of Hawaii at Manoa and that, based on her extensive research of court and other government records, Kaluau's mother's name was Kekiu, not Kekui. Kai referred to a number of exhibits attached to her declaration which she claimed raised genuine issues of material fact regarding the validity of the Deed to Richardson from which Wailuku claimed paper title to Apana 1. Kai claimed that these documents demonstrated that the Deed to Richardson was not signed by Kekiu, as required for a valid paper title, and the deed also did not describe the land being conveyed as Apana 1 of [LCA] 8672, thus calling into question which parcel of land was actually conveyed to Richardson. *Wailuku Agribusiness Co.*, 112 Hawai'i at 257, 145 P.3d at 800.

16. Attached to the summary judgment motion for Apana 3 were declarations of Dando, Suzuki, and Chumbley. As with Apana 1, Dando similarly testified that he was equally familiar with Apana 3 and that "[f]rom as early as 1974 [Wailuku] and its predecessors openly, notoriously, continuously, and exclusively used the land for sugar cane cultivation" and "[f]rom the late 1980's to 1997 [Wailuku] and its predecessors, openly, notoriously, continuously, and exclusively used the land for pineapple cultivation." Suzuki and Chumbley also affirmed Dando's declarations as to Apana 3.

concludes [Wailuku] is entitled to judgment as a matter of law." (Emphasis added.) The orders granting summary judgment regarding Apana 1 and Apana 3 were reduced to a final judgment on June 2, 2003.

On June 27, 2003, Defendants filed their notice of appeal. Wailuku did not cross-appeal.

### III.

Before the ICA, Petitioners argued that (1) Wailuku failed to establish all elements of its claim of adverse possession as to Apana 1; (2) Wailuku failed to establish all elements of its claim of adverse possession as to Apana 3 and (3) Wailuku relied on inadmissible hearsay evidence in its claim of adverse possession of Apana 1 and Apana 3. On August 1, 2006, the ICA affirmed the court's grant of summary judgment as to both Apana 1 and Apana 3. *Wailuku Agribusiness Co.*, 112 Hawai'i at 260, 145 P.3d at 803.

### IV.

In their application Petitioners raise two questions:

1. Did the ICA err in concluding that summary judgment was properly granted by [the court] to [Wailuku] with respect to Apana 1 and Apana 3 of [LCA] 8672, [RP] 6483?

2. Did the ICA incorrectly apply the principles of [*Bennett supra* ], in concluding that [Wailuku] was entitled to Apana 1 and Apana 3 by adverse possession?

In its opposition motion, Wailuku does not directly respond to the specific questions but argues that (1) "[t]he [ICA] thoroughly addressed the principles of [*Bennett* ]"; (2) "this appeal does not deal with any issue of first impression ... [but] deals with the elements of adverse possession, which have been addressed on numerous occasions by the Hawaii Supreme Court"; and (3) "this case does not deal with any issue of public interest."

Petitioners' questions together raise the issue of whether the court correctly granted summary judgment and the ICA was right in affirming the court. The discussion following, then, centers on the evidence pertaining first, to Apana 1 and second, to Apana 3.

### V.

As to Apana 1, Petitioners contend in their application that the ICA erred because "(1) [Wailuku failed] to establish by clear and positive proof all elements of its claim of adverse possession to Apana 1" and "(2) genuine issues of material fact" exist. They maintain (a) "[t]he initial conveyance of Apana 1 from Kalapuna, Piena and Puweuweu to [Richardson] was defective since none of the grantors had proper right, title or interest to convey to [Richardson,]" (b) "[a]ssuming arguendo that [Richardson properly] acquired [the] lands[,] ... [t]he [d]eed conveying 'all that piece of land situate in Kuaiwa, Waikapu, Maui,' arguably, conveyed Apana 2, and not Apana 1[,]" (c) "there is a genuine issue of material fact on the issue of whether [Wailuku] and/or [its] predecessors in interest were aware and knew, or in the exercise of reasonable care, should have been aware and should have known of the presence of cotenants to Apana 1" and "[Wailuku] failed to provide credible, probative evidence of any efforts made to notify all cotenants not in possession of its intent to exercise adverse possession[.]"

Emphasizing the last proposition, Petitioners, relying on *Morinoue v. Roy,* 86 Hawai'i 76, 83, 947 P.2d 944, 951 (1997), *Bennett,* 57 Haw. at 209, 552 P.2d at 1390, and *Petran v. Allencastre,* 91 Hawai'i 545, 548, 985 P.2d 1112, 1115 (App.1999), argue (1) "Haleamau's and Kaluau–Opio's Deed· dated January 7, 1875, recorded in the Bureau of Conveyances, State of Hawaii, at Liber 51, pp. 305–306, which legally transferred all of their right, title and interest in LCA 8672 to Kahololio, effectively served as notice to all of Kahololio's ownership interest"; (2) "Kahololio's heirs and descendants, as title owners of public record to Apana 1 and 3, are and were cotenants who were entitled to notice"; and (3) "[Wailuku] and/or its predecessors in interest were aware and knew, or in the exercise of reasonable care, should have been aware and should have known that Kahololio was the owner of Apana 1 and 3."

According to Petitioners, "[Wailuku] argued that there were no cotenants as a matter of law[,] ... contend[ing] that '[Wailuku] and its predecessors had no reason to suspect that a cotenancy existed.' " As Petitioners note, Wailuku points "to the 1855 [d]eed purportedly conveying Apana 1 from Kalapuna, et al., to [Richardson] as proof because the conveyance of 'that entire piece of land at Kuaiwa, Waikapu, Maui' would not have [led] it to suspect a cotenancy.' " Petitioners assert that, consequently, "[n]o evidence supporting [Wailuku's] position was submitted[, thus t]he ICA and the trial court erred[.]"

Petitioners further maintain that, contrastingly, "Kahololio's descendants, Jade Miyamoto and Wayne Chun, expressed in declarations submitted to the [court] the absence of any knowledge or notice that [Wailuku] was intending to exercise adverse possession over Apana 1" while "[Wailuku's] claims that Apana 1 and 3 were used ... 'openly, notoriously, continuously, and exclusively ... for sugar cane cultivation' [are based on] statements [that] are conclusory and are not predicated upon personal knowledge or specific factual knowledge."

## VI.

As to Apana 3, Petitioners maintain the unresolved "[g]enuine issues of material fact ... [are] (1) whether Petitioners are cotenants of Apana 3; (2) whether [Wailuku] acted in good faith by notifying Petitioners of its claim of adverse possession to Apana 3; and (3) whether [Wailuku] met all requirements of proving title through adverse possession." According to Petitioners, (a) "[Wailuku's] claim to Apana 3 apparently derives from its taking of land in close proximity to other lands possessed by it without regard to ownership or title[,]" (b) "[a] simple title search of the Bureau of Conveyances would have yielded information concerning the ownership by the heirs of Kahololio[,]" (c) "[Petitioners] have previously contended that Apana 3 contains the burials of their ancestors[,] ... [but Wailuku's] alteration of Apana 3 after the litigation commenced caused the removal and destruction of identifying characteristics ... in the determination of burial sites[,]" and (d) "[Wailuku] relied upon declarations of [Tadakuma], [Mochizuki], [Dando, Suzuki, and Chumbley] which contain conclusory statements ... [barred by Hawai'i Rules of Evidence (HRE)] Rule 802 ... [and] exhibits ... not admissible because of the lack of proper foundation and authentication and noncompliance with [Hawai'i Rules of Civil Procedure (HRCP)] Rule 56(e)." (Capitalization omitted.)

## VII.

On appeal, the ICA was required to follow the rule that "[a]n award of summary judgment is reviewed *de novo* under the same standard applied by [the court]." *French v. Pizza Hut, Inc.*, 105 Hawai'i 462, 466, 99 P.3d 1046, 1050 (2004) (citing *Amfac, Inc. v. Waikiki Beachcomber Inv. Co.*, 74 Haw. 85, 104, 839 P.2d 10, 22 (1992) (citations omitted)). "Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law." *Tauese v. State, Dep't of Labor & Indus. Relations*, 113 Hawai'i 1, 16, 147 P.3d 785, 800 (2006) (quoting *Amfac, Inc.*, 74 Haw. at 104, 839 P.2d at 22 (internal quotation marks and citation omitted)). " 'A fact is material if proof of that fact would have the effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties.' " *Morinoue*, 86 Hawai'i at 80, 947 P.2d at 948 (quoting *Hulsman v. Hemmeter Dev. Corp.*, 65 Haw. 58, 61, 647 P.2d 713, 716 (1982)). In a motion for summary judgment, "[a]ll evidence and inferences must be viewed in the light most favorable to the non-moving party." *French*, 105 Hawai'i at 466, 99 P.3d at 1050 (citing *Maguire v. Hilton Hotels Corp.*, 79 Hawai'i 110, 112, 899 P.2d 393, 395 (1995)).

## VIII.

At the outset, Petitioners contend that the declarations of Tadakuma, Mochizuki, Dando, Suzuki, and Chumbley, relied on by the ICA to determine adverse possession of both Apana 1 and Apana 3, were barred by HRE Rule

802 [17] because they were "unsupported by any specific information establishing their personal knowledge of the statements made." They further maintain that the exhibits were inadmissible because they did not comply with HRCP Rule 56(e). As to the declarations, the ICA held that the declarations of "Tadakuma and Mochizuki ... were inadmissible under ... HRCP Rule 56(e)." *Wailuku Agribusiness Co.*, 112 Hawai'i at 255, 145 P.3d at 798.

Regarding the declarations of Dando and Suzuki, the ICA indicated that "the declarations were made on personal knowledge, [as] evidenced by the statements that Dando and Suzuki were employees of [Wailuku] for twenty-eight and twenty-four years, respectively, and were 'familiar with the land designated as Apana 1[,]' " and "stated, based on their personal knowledge, that Apana 1 was used for sugar cane and pineapple cultivation ... [during] the [relevant] periods[.]" *Id.* As to Chumbley's declaration that he is "the President of [Wailuku], [and has] knowledge of the facts stated [t]herein based on records and maps regarding land use," the ICA, citing *Stallard v. Consol. Maui, Inc.*, 103 Hawai'i 468, 476, 83 P.3d 731, 739 (2004), stated that "facts set forth in an affidavit ... based on personal knowledge may be reasonably inferred from the position and nature of the affiant." *Wailuku Agribusiness Co.*, 112 Hawai'i at 256, 145 P.3d at 799.[18]

The ICA also indicated that the declaration of Colleen H. Uahinui (Uahinui) did not satisfy HRCP Rule 56(e) because "Uahinui did not attach sworn or certified copies of the documents she relied on to establish the facts set forth in her declaration, ... except [ ] [for] ... Frazier's ... translation of the deed from Kalapuna, Piena, and Puuweuweu to Richardson, which Frazier attested was translated 'truly and correctly....' " *Id.* A review of the affidavits substantiates the ICA's conclusions. It does not appear that for the reasons given in its opinion, the ICA gravely erred in affirming admission of these documents.

## IX.

In order to establish title to real property by adverse possession, a claimant " 'must bear the burden of proving by clear and positive proof each element of actual, open, notorious, hostile, continuous[,] and exclusive possession for the statutory period.' " [19] *Petran*, 91 Hawai'i at 556–57, 985 P.2d at 1123–24 (quoting *Lai*, 58 Haw. at 368–69, 569 P.2d at 357 (brackets omitted)). Actual, open, and notorious possession is established where a claimant shows " 'use of the land to such an extent and in such a manner as to put the world on notice' by means 'so notorious as to attract the attention of every adverse claimant.' " *Morinoue*, 86 Hawai'i at 82, 947 P.2d at 950 (quoting *Cheek v. Wainwright*, 246 Ga. 171, 269 S.E.2d 443, 445 (1980)). "The element of hostility is satisfied by showing possession for oneself under a claim of right[,]" and "[s]uch possession must import a denial of the owner's title." *Petran*, 91 Hawai'i at 557, 985 P.2d at 1124 (quoting *Okuna v. Nakahuna*, 60 Haw. 650, 656, 594 P.2d 128, 132

---

17. Hawai'i Rule of Evidence (HRE) Rule 802 provides that "[h]earsay is not admissible except as provided by these rules, or by other rules prescribed by the Hawai'i supreme court, or by statute."

18. A copy of all the exhibits consisting of a map of Apana 1, a lease of land, and aerial photos of Apana 1 and of an irrigation layout of Apana 1, were attached to Chumbley's affidavit, and by virtue of his knowledge as President of the company, the exhibits would appear to be properly authenticated.

19. Between 1898 and 1973, the statutory period for establishing title to real property by adverse possession was ten years. *Morinoue*, 86 Hawai'i at 81 n. 6, 947 P.2d at 949 n. 6 (citing *Lai v. Kukahiko*, 58 Haw. 362, 367 n. 4, 569 P.2d 352,

356 n. 4 (1977) (citing 1898 Haw. Sess. L. Act 19)). Although the period was extended to twenty years in 1973, this change did not affect "rights that had already matured" prior to that date. *Id.* (citing HRS § 669–1(b) (Supp.1975); 1973 Haw. Sess. L. Act. 26, § 6 at 32). Therefore, to have established a prima facie case of adverse possession for Apana 1, Wailuku was required to show that the elements of adverse possession had been satisfied for either a ten-year period between 1935 (when it alleged it began to use Apana 1 for sugar cane cultivation) and 1973, or for a twenty-year period on a claim brought after 1973. Wailuku alleges more than 50 years of continuous use of Apana 1, thus it appears to satisfy either statutory period.

(1979)). Continuity and exclusivity of possession require that the "adverse possessor's use of a disputed area . . . rise to that level which would characterize an average owner's use of similar property." *Id.* (quoting *Tenala, Ltd. v. Fowler,* 921 P.2d 1114, 1119 (Alaska 1996)).

As the ICA noted, "[t]he declarations of Dando, Suzuki, and Chumbley . . . set forth facts that establish the open, notorious, and continuous possession elements for establishing title by adverse possession." *Wailuku Agribusiness Co.,* 112 Hawai'i at 256, 145 P.3d at 799. Specifically, Wailuku and its predecessors openly, notoriously, continuously, and exclusively used Apana 1 for sugar cane cultivation from as early as 1935 to the late 1980's, and for pineapple cultivation from the late 1980's to 1997. Further, Wailuku's lessee, Maui Pineapple Company Ltd., has openly, notoriously, continuously, and exclusively used Apana 1 for pineapple cultivation from 1997 to the present.

 The declarations set forth above do not specifically allege that Wailuku's claim was hostile. However, as the ICA noted, where all the other elements of adverse possession have been met, there is generally a presumption of hostility.

> [I]n the absence of any explanation whatsoever, "where one is shown to have been for the statutory period in actual, open, notorious, continuous and exclusive possession, apparently as owner, and such possession is unexplained, either by showing that it was under a lease from, or other contract with or otherwise by permission of the true owner, *the presumption is that such possession was hostile.*"

*Id.* at 252, 145 P.3d at 795 (quoting *Pioneer Mill Co., Ltd. v. Dow,* 90 Hawai'i 289, 299, 978 P.2d 727, 737 (1999) (citation omitted) (emphases added)). "Thus, if the presumption of hostility remains unrebutted by the nonmovant, the presumption of hostility would satisfy the movant's burden of proving the element of hostility." *Pioneer Mill Co.,* 90 Hawai'i at 299, 978 P.2d at 737 (citations omitted).

 The ICA, applying the latter presumption, concluded that because a prima facie case of the other elements of adverse possession was shown, the element of hostility was met. Thus based on the declarations, the ICA concluded that adverse possession was proven:

> Although the [1855] deed [to Richardson], on its face, did not specifically mention [A]pana 1 or define the metes and bounds of the land being conveyed, the declarations of Dando, Suzuki, and Chumbley that Wailuku or its predecessors, under color of the 1855 deed, had been using Apana 1 for agricultural purposes for the statutory period provide evidence of Wailuku's hostile and exclusive possession of Apana 1.

*Wailuku Agribusiness Co.,* 112 Hawai'i at 256–57, 145 P.3d at 799–800. However, as this court has noted, where a cotenancy exists there is a "special burden in proving hostile possession" that requires the cotenants making a claim of adverse possession "to show that they had acted in good faith in relation to their cotenants." *Morinoue,* 86 Hawai'i at 82, 947 P.2d at 950 (citing *Bennett,* 57 Haw. at 209, 552 P.2d at 1390).

 *Petran* noted that in *Bennett,* this court concluded that "a tenant in common shares a general *fiduciary relationship* with his cotenants[.]" 91 Hawai'i at 554, 985 P.2d at 1121 (quoting *Bennett,* 57 Haw. at 208, 552 P.2d at 1390 (emphasis in original)). Because of this fiduciary relationship, "a tenant in common claiming adverse possession must prove that he or she acted in good faith towards the cotenants during the statutory period." *Id.* (brackets and citation omitted). The requirement of good faith will, in most cases, "mandate that *the tenant claiming adversely must actually notify his or her cotenants that he or she is claiming against them.*" *Id.* (quoting *Bennett,* 57 Haw. at 209, 552 P.2d at 1390) (brackets and citation omitted) (emphasis in original). But, in certain exceptional circumstances the good faith requirement may be satisfied with less than actual notice:

> [W]here the tenant in possession has no reason to suspect that a cotenancy exists; or where the tenant in possession makes a good faith reasonable effort to notify the cotenants but is unable to locate them; or where the actual knowledge that the ten-

ants out of possession already have actual knowledge that the tenant in possession is claiming adversely to their interests.

*Id.* at 554–55, 985 P.2d at 1121–22 (citation omitted) (emphasis in original). "In these limited circumstances, the notice requirement will be satisfied by constructive notice and 'open and notorious possession.' " *Id.* at 555, 985 P.2d at 1122 (citation omitted). Accordingly, if Petitioners are cotenants with Wailuku in Apana 1, Wailuku was required, in proving hostile possession, "to show that [it] had acted in good faith in relation to [its] cotenants." *Morinoue*, 86 Hawai'i at 83, 947 P.2d at 950 (citing *Bennett*, 57 Haw. at 209, 552 P.2d at 1390).

 Additionally, according to *Petran*, "[u]nder *Bennett*, 'a finding of bad faith' may be inferred from evidence that the 'cotenant in possession ... *ought to have known that there existed a cotenancy.*' " *Petran*, 91 Hawai'i at 556, 985 P.2d at 1123 (quoting *Bennett*, 57 Haw. at 211, 552 P.2d at 1391) (ellipses and emphasis in original). In that regard, "publicly recorded conveyances evidencing the existence of a cotenancy in land may render a cotenant's belief that he or she had no reason to suspect the cotenancy's existence not objectively reasonable under the rule set forth in [*Bennett, supra* ]." *Id.* at 548, 985 P.2d at 1115. Thus, the burden is on Wailuku "affirmatively to adduce evidence that there was 'no reason to suspect that a cotenancy exist[ed].' " *Morinoue*, 86 Hawai'i at 83, 947 P.2d at 951 (citation omitted).

## X.

### A.

 Based on the record, genuine issues of material fact remain as to whether Wailuku acted in good faith towards its purported cotenants in Apana 1. The court apparently rejected Wailuku's paper title argument and made its ruling based solely on the adverse

possession claim. Wailuku did not cross-appeal on the paper title issue.[20] However, in its motion for summary judgment, Wailuku argued that it had both paper title and title by adverse possession to Apana 1. Specifically, Wailuku argued "Apana 1 was granted in 1852 to Kaluau, who died intestate survived by his mother, [Kekiu] and father[, Kalapuna]." It contended that Kekiu predeceased Kalapuna and in 1855, Kalapuna "conveyed 'that entire piece of land at Kuaiwa, Waikapu, Maui' to [Richardson], after which title vested by mesne conveyances in [Wailuku]." Wailuku assumed for purposes of summary judgment "that if Kaluau's property descended to his mother, [Kekiu] and father, [Kalapuna], equally, and *if [Kekiu] did not convey during life, then title to her 1/2 interest descended equally to her heirs from whom [Petitioners] are descended, rather than her husband, [Kalapuna,] even though her husband's 1855 conveyance to [Wailuku's] predecessor was of all of Apana 1, and not just 1/2 interest.*" (Emphasis added.) The foregoing indicates it is Wailuku's contention that, even assuming Wailuku and/or its predecessors were cotenants with the heirs of Kaluau's mother, summary judgment should nevertheless be granted. However, assuming a cotenancy existed, it was incumbent upon Wailuku to prove it acted in good faith towards cotenants upon claiming adverse possession.

### B.

 Moreover, the 1875 conveyance of Apana 1 by way of the deed from Haleamau and Kaluau–Opio and their spouses to Kahololio was filed in the Bureau of Conveyances. Thus, the interest of Kahololio and her descendants in the subject property was seemingly a matter of public record when Wailuku and its predecessors claimed adversely beginning from 1935 to the late 1980's through sugar cane cultivation, and

---

20. In its discussion of Apana 1, the ICA noted that the court's assumption that paper title did not exist was not attacked on appeal:

[The court] assumed that Wailuku did not have valid paper title to [A]pana 1. Since this assumption has not been challenged on appeal, our examination focuses on whether Wailuku

established the material facts necessary to establish the essential elements of its adverse possession claim to [A]pana 1 for which Wailuku sought summary judgment in its favor.

*Wailuku Agribusiness Co.,* 112 Hawai'i at 251, 145 P.3d at 794.

from the late 1980's to 1997 for pineapple production. That fact would weigh against a finding that Wailuku's belief in the non-existence of a cotenancy was objectively reasonable. *See Bennett,* 57 Haw. at 210, 552 P.2d at 1391 (stating that "the standard of good faith includes an objective requirement of reasonableness"). The recording of deeds ensures that the public, including Wailuku, would be afforded notice of the property interests detailed in the deeds and of potential claims to the property. Deeds serve as notice " 'to those who are bound to search the record.' " *Petran,* 91 Hawai'i at 556, 985 P.2d at 1123 (quoting *In re Nelson,* 26 Haw. 809, 820 (1923)).

Even if the 1855 deed to Richardson by Kalapuna, Kaluau's father, Piena, and Puweuweu, purports to convey Kaluau's "entire" piece of property at Waikapu, a question of fact exists as to whether Wailuku's belief was objectively reasonable in light of the 1875 deed on record at the time Wailuku claimed adverse possession began. *See Bennett,* 57 Haw. at 211, 552 P.2d at 1391 (concluding that "[t]he existence or nonexistence of color of title is one factor for the jury to consider in evaluating whether a party in possession reasonably believed himself to be sole owner"); *see also Morinoue,* 86 Hawai'i at 83, 947 P.2d at 951 (determining that where an adverse possessor obtained conveyances through quitclaim deeds and neither deed expressly purported to transfer full title, genuine issues of material fact existed as to whether the plaintiffs should have known of the existence of cotenants).

Evidence from publicly filed documents, viewed in the light most favorable to Petitioners as the nonmoving parties, *French,* 105 Hawai'i at 466, 99 P.3d at 1050, suggests a cotenancy may exist among Wailuku and Kahololio's heirs. Under these circumstances, there remain genuine issues of material fact as to whether Wailuku and its predecessors had no reason to suspect the existence of a cotenancy and, thus, were not required to serve notice of a hostile claim to Apana 1.

That Wailuku and its "predecessors were totally ignorant of the cotenancy" would not absolve them of the notice requirement. *Petran,* 91 Hawai'i at 555, 985 P.2d at 1122 (quoting *Bennett,* 57 Haw. at 210, 552 P.2d at 1391) (brackets omitted). "Rather, the standard of good faith includes an objective requirement of reasonableness, in addition to a subjective requirement that the claimant believes himself or herself to be the sole owner." *Id.* (citation and brackets omitted). In *Petran,* the ICA determined that such questions are to be determined by the trier of fact and stated:

> *Whether or not such persons believed that there was no cotenancy . . . would be a question for the trier of fact, to be decided in light of all the facts and circumstances of the case."* [*Bennett,* 57 Haw. at 211, 552 P.2d at 1391.] While "the existence or nonexistence of color of title is one factor for the jury to consider in evaluating whether a party in possession reasonably believed himself [or herself] to be sole owner, . . . *evidence that the cotenant in possession knew or ought to have known that there existed a cotenancy . . . would go towards justifying a finding of bad faith, assuming that the cotenants did not already have actual knowledge of the adverse claim.*

*Petran,* 91 Hawai'i at 555, 985 P.2d at 1122 (citation and brackets omitted) (emphases added).

Wailuku would be required to prove that "that there had been *no reason* for the tenants in possession ( [Wailuku] or [its] predecessors) to suspect the existence of a cotenancy." *Id.* (citation and brackets omitted) (emphasis in original). Thus, whether or not Wailuku acted in good faith towards its cotenants would be a genuine issue of material fact to be determined by the trier of fact and, hence, summary judgment was improperly granted as to Apana 1, and the ICA gravely erred in affirming summary judgment.

XI.

As to Apana 3, Wailuku only claimed title to Apana 3 through adverse possession.[21] Therefore it must be shown that

---

21. In its opening brief, Petitioners contended

that Wailuku did not exercise good faith towards

Wailuku was entitled to summary judgment as a matter of law with respect to Apana 3. In support of its summary judgment motion on Apana 3, Wailuku submitted evidence similar to that submitted on Apana 1 and included declarations from Tadakuma, Mochizuki, Dando, Suzuki, and Chumbley. *See supra* note 15. As noted earlier, the ICA determined the declarations from Tadakuma and Mochizuki were inadmissible and relied on the declarations of Dando, Suzuki, and Chumbley as evidence that Wailuku had established a prima facie case of adverse possession of Apana 3.

The declarations of Dando, Suzuki, and Chumbley attached to Wailuku's motion for summary judgment indicate that Wailuku and its predecessors openly, notoriously, continuously, and exclusively used Apana 3 for sugar cane cultivation from as early as 1935 to the late 1980's and for pineapple cultivation from the late 1980's to 1997. As noted *supra*, there is a presumption of hostility where all the other elements of adverse possession have been met. Here, because Wailuku has shown its open, notorious, continuous, and exclusive possession of Apana 3 for the statutory period,[22] the presumption of hostility applies. Petitioners have not rebutted the presumption of hostility, thus, Wailuku has established a prima facie case of adverse possession of Apana 3.

As to Petitioners' argument that they are cotenants with Wailuku on Apana 3, the ICA noted that "Petitioners set forth no evidence that Wailuku had any record title to [A]pana 3 that conflicted with [Petitioners'] inherited interest in Apana 3" and concluded that because there was no "evidence of a cotenancy between Wailuku and [Petitioners], the legal principles governing cotenancy were inappli-

cable to [A]pana 3 as a matter of law." *Wailuku Agribusiness Co.*, 112 Hawai'i at 259, 145 P.3d at 802. In holding thusly, the ICA did not gravely err in determining Wailuku was entitled to judgment as a matter of law on Apana 3.

### XII.

For the reasons stated above, the ICA's August 1, 2006 published opinion affirming the June 2, 2003 judgment of the court in favor of Wailuki Agribusiness on the grounds of adverse possession as to Apana 1 is reversed and that part of the case is remanded to the court in accordance with this opinion; the ICA opinion is affirmed as to Apana 3.

---

its cotenants as required by *Bennett* because "[Wailuku] and its predecessors were aware and knew, or in the exercise of reasonable care, should have been aware and should have known of the existence of cotenants to Apana 3." Petitioners further stated that "[Wailuku] has conceded that it has no paper title to Apana 3."

However, Wailuku correctly responded that the "*Bennett* mandate that 'the tenant claiming adversely must actually notify his cotenants that he is claiming adversely against them' is not applicable if no record title is vested in the adverse possession title claimant." Petitioners' reply was that "[Wailuku] acknowledges it possesses no record title to Apana 3" and "the

record on appeal is devoid of any basis for [Wailuku] to assert color of title to Apana 3."

22. In order to establish a prima facie case of adverse possession for Apana 3, Wailuku was required to show that all elements had been satisfied for either a ten-year period between 1935 (when its alleged use of Apana 3 for sugar cane cultivation began) and 1973 or for a twenty-year period on a claim brought after 1973. *See supra* note 18 (explaining the applicable statutory periods for establishing title through adverse possession). Wailuku alleges more than 50 years of continuous use of Apana 3, thus it appears to satisfy either statutory period.